## No. 14,981.

COLORADO FINANCE COMPANY *v.* B. F. BENNET OIL
COMPANY.
(129 P. [2d] 299)

Decided September 14, 1942.

Messrs. ENOS, DITTMAN & MORRATO, for plaintiff in error.

Mr. EARL J. HOWER, Mr. HORATIO S. RAMSEY, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS action was instituted by B. F. Bennet Oil Company, defendant in error, against the Colorado Finance Company, plaintiff in error, and C. E. Stephenson, as joint defendants to recover a balance of $305.01 due for goods sold and delivered to them at their instance and request. Answer was a general denial. Trial was to the Court who found for the Oil Company and judgment was entered in the amount prayed for against both defendants. The sole plaintiff in error is the Colorado Finance Company which seeks reversal on a writ of error. Reference will be made to the parties as the Oil Company or plaintiff, the Finance Company or defendant, and Stephenson, personally, or as the Stephenson Motor Company.

The facts which gave rise to the controversy, briefly stated, are: Stephenson for a number of years prior to the summer of 1904 had operated an automobile business in Littleton known as the C. E. Stephenson Motor Company. He became rather deeply involved financially and was indebted to the Finance Company to the extent of about $20,000. Being desirous of protecting this indebtedness—only about half of which was secured—the Finance Company arranged for a meeting August 1, 1940, which was attended by Messrs. Treece and Owen, president and secretary-treasurer, respectively, of the Finance Company, Mr. Stephenson and a Mr. F. V. Woodward. As a result of this meeting the following agreement (Exhibit A) was entered into and signed by the respective parties.

"August 1, 1940

"Mr. Forrest V. Woodward,
Englewood, Colorado,
and,
C. E. Stephenson,
Littleton, Colorado.

"Gentlemen:

"In consideration of the mutual promises herein contained, it is hereby understood and agreed that Forrest V. Woodward is, from and after the date of this letter, to act as manager of C. E. Stephenson Motor Company, of Littleton, Colorado, and, as such manager, is to have full charge and management of said business, except for the operation of the shop, which Mr. Stephenson shall manage, subject to our supervision and control. This includes the right to employ salesmen upon a commission basis, the terms of which are to be determined by J. D. Treece and/or H. H. Owen, or their agent. Mr. Woodward, however, in the management of said business, is to be subject at all times to the supervision and control of J. D. Treece and/or H. H. Owen, or their duly authorized agent or representative, and Mr. Woodward hereby agrees to be governed in his management of said busi-

ness by their wishes. For these services, Mr. Woodward is to receive the compensation provided for in said agreement with Mr. Stephenson.

"All moneys received by Mr. Woodward from the business shall be applied by him as shall from time to time be directed by Mr. Treece and/or Mr. Owen, or their agent or representative. In addition, all purchases of supplies by Mr. Woodward shall be paid for in cash at the time of their purchase or delivery.

"Mr. Woodward hereby agrees to render an account of the business to Mr. Treece or Mr. Owen when requested to do so by them.

"This agreement shall be in full force and effect until all debts owed by Mr. Stephenson to the Colorado Finance Company are fully paid, or until the Colorado Finance Company shall agree to permit Mr. Stephenson to resume the operation of said business as provided in said agreement between Mr. Woodward and Mr. Stephenson.

"This letter constitutes an agreement between us when approved by you hereon.

> "J. D. Treece
> "H. H. Owen

"We hereby accept and agree to the
terms of the above agreement this
First day of August, 1940.
Forrest V. Woodward
C. E. Stephenson."

Under this agreement, Woodward took charge of the business of the Stephenson Motor Company on August 1, 1940, and was in charge until October 1st, when one Fleenor succeeded him as manager. There is no question concerning the fact that prior to August 1, and during the fall of 1940, the Oil Company was delivering its merchandise to the Stephenson Motor Company. Nor is it denied that the merchandise, delivered during the time that Woodward and Fleenor were in charge, inured directly to the benefit of the Finance Company.

All of the specifications of points may be comprehended in three relatively simple questions: 1. May the Finance Company escape liability because Exhibit A was signed by Treece and Owen as individuals rather than in their official capacities as president and secretary, respectively, of the Finance Company? 2. May the Finance Company escape liability because the account was carried on the books of the Oil Company under the designation, "The C. E. Stephenson Motor Company?" 3. Does the statute of frauds bar recovery?

In our opinion all of these questions must be answered in the negative.

1. While the trial court did not expressly say that the signing of Exhibit A by Treece and Owen in their individual capacity was a ruse to avoid legal liability, it is quite obvious to us that such was the purpose. But assuming such was not the purpose, a reasonable deduction from the exhibit itself and the circumstances surrounding its execution would be that they did sign as corporate officers. The agreement was written on the stationery of the company, was drawn by the attorney for the company, and specifically provides: "This agreement shall be in full force and effect until all debts owed by Mr. Stephenson to the Colorado Finance Company are fully paid, or until the Colorado Finance Company shall agree to permit Mr. Stephenson to resume the operation of said business." This language indicates that the agreement was in fact for and on behalf of the Finance Company. The cloak of corporate protection or liability may not be shed or donned to suit the personal whim or caprice of its officers nor to perpetrate a fraud, which would be the result here if we reversed the judgment on this ground.

2. Effort was made to show that no credit was ever extended to the Finance Company, or any merchandise sold in reliance upon its credit, but there is ample evidence in the record to show that no credit was ever extended to Stephenson, because up to August 1st all

merchandise delivered by the Oil Company was paid for on delivery. As to what transpired after Woodward was placed in charge we quote his testimony as follows: "Q. You were to have the full management of that business subject to the supervision and control of the Colorado Finance Company? A. Yes. * * * Q. In connection with the operation of the Stephenson Motor Company, you testified you were solely under the supervision and control of the Colorado Finance Company? A. Yes, sir. Q. As such was it your duty to order supplies such as gas and oil and parts for that company? A. Yes, sir. * * * Q. Whom were you purchasing gasoline and oil from at that time? A. Bennet Oil Company."

The record shows that after October 1, Fleenor, who was then in charge, made some payments on the account and promised the driver for the Oil Company that he would obtain a check from the Finance Company covering the account.

As to the account being carried in the name of the Stephenson Motor Company, the record shows that no checks could be drawn on that account except they be countersigned by either Woodward or Fleenor, and on each Saturday for a number of weeks, while this account was open, the Finance Company deposited sufficient sums to the credit of Stephenson to cover a number of checks drawn on his account. While most of these were for pay roll, they indicate that the business was conducted for the benefit of the Finance Company.

Under these circumstances, in addition to reasons already suggested, estoppel would lie against the Finance Company.

3. As to the statute of frauds (section 12, chapter 71, '35 C.S.A.) being a bar we simply say that Exhibit A was a sufficient memorandum, and in addition we think the record shows an original promise by the Finance Company for its benefit. "It is equally true, as this court [Court of Appeals] has many times decided, that a principal may not attack the provisions of a contract

and reject in part and at his pleasure what the agent has done when he has received an unquestioned benefit. Ordinary business principles and common honesty forbid a principal to keep the product and refuse to pay, even if the agent had no authority to buy. This is and always has been the law, and there is enough in this case to warrant its application." *Witcher v. Gibson,* 15 Colo. App. 163, 61 Pac. 192, 193.

Judgment affirmed.

MR. CHIEF JUSTICE YOUNG, MR. JUSTICE BURKE and MR. JUSTICE HILLIARD concur.