## No. 21560.

Sanford B. Cook and Raimon E. Cook *v*. Fred D. Hargis, also known as F. D. Hargis.

(435·P.2d 385)

Decided December 18, 1967. Rehearing denied January 8, 1968.

TINSLEY, ALPERSTEIN, FRANTZ and PLAUT, for plaintiffs in error.

ROGER M. BREYFOGLE, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE KELLEY.

THE plaintiffs (owners) brought suit against the defendant (tenant) on a claim for unlawful detainer of a

retail store building (the property) located in Buena Vista, Chaffee County, Colorado. The court held for the defendant. The plaintiffs are here on a writ of error seeking to reverse the judgment of the trial court. The parties will be referred to as they appeared below, or as landlord and tenant, or by name.

The plaintiffs' assignments of error can be summarized as follows:

1. The trial court erred in holding that Exhibit "A" is a lease;

2. That, even if Exhibit "A" is, by its terms, a lease, the court erred in holding that it was effectively executed by Salida Building & Loan Association (association), plaintiffs' predecessor in title; and

3. That the court erred in holding that the possession of the defendant placed the plaintiffs on inquiry to determine what possessory rights the defendant claimed in the property.

Only such facts as are necessary to discuss the legal issues will be delineated.

In 1958 the association became the owner of *the property,* divided into two parts for rental and occupancy, one part of which was then occupied by the defendant. The other part, commonly referred to as the "Pine Theatre," was vacant and unrented.

Sometime prior to June 23, 1961, the defendant entered into rental negotiations with the association. The association was represented in the negotiations by Jacobs, its secretary and managing officer. The negotiations culminated, so far as the trial court was concerned, with Exhibits "A" and "B." The outcome of this appeal must turn on the legal effect of these two exhibits. We, therefore, copy them in their entirety.

*EXHIBIT "A"*
"THE HI-ROCKY STORE
BUENA VISTA, COLO.

June 23, 1961

"Mr. Ted Jacobs
Salida Building & Loan Association
Salida, Colo.

"Dear Ted:

"The old Pine Theatre building will be ready to move into tonite, but we still do not have a lease. We much prefer to have one before moving anything into that side. Or at least a letter of intent.

"Here is the way we understand the proposed lease, from our various conversations.

"You are to place the building in a rentable condition, with a good floor, walls, ceiling, seven light fixtures, windows, doors, etc.

"We are to sign a lease at $75.00 a month for the Pine Theatre side, for a three year period, and with an option to renew for another three year period at the same rent.

"We are to occupy also our present side up to the first of the year, with the option of renewing for an additional year on the basis of our present rent of $50.00 a month; and the further option of renewing from year to year on the same terms, or at least until our lease expires on the Pine Theatre side. Also to include the privilege of sub-leasing one or both sides, to a tenant suitable to you and to us, if it seems necessary. All interested parties working together to keep space occupied.

"If this seems OK, you may just OK on bottom of this letter and return one copy.

"Sincerely
/s/ F. D. Hargis
F. D. Hargis

"Accepted by
Theo M. Jacobs
Secretary
Salida Bldg. & Loan Assn." (In Jacob's handwriting.)

*EXHIBIT "B"*

"THE SALIDA BUILDING AND LOAN ASSOCIATION
"Oldest Building and Loan Association in Colorado
Organized in 1886
Salida, Colorado
June 23, 1961

"Mr. F. D. Hargis
Hi-Rocky Store
Buena Vista, Colorado

"Dear Fred:

"Upon my return to the office, I found your letter to me and the copy regarding the lease of the buildings. Therefore, I am signing this copy and sending it back to you.

"We will have our attorney draw up the lease, beginning on June 26, on the Pine Theater, according to the above terms, also, on your present property.

"I believe you will like the spaciousness of your new building and you will have more room to work and get around, and to display your merchandise.

"Yours very truly,
/s/ Ted
Theo. M. Jacobs,
THE SALIDA BLDG. & LOAN ASSN.

"TMJ:mlh"

The trial court found that:

"* * * Jacobs talked the proposal over with several of the members of his board and they accepted the proposal *informally*. Jacobs then wrote '*Accepted*' on the bottom of 'Exhibit A' and returned it to defendant. Jacobs knew or should have known the contents of 'Exhibit A.' 'Exhibit B' is a cover letter which accompanied 'Exhibit A' when it was returned to defendant.

"On July 11, 1961, Jacobs sent 'Exhibit C and D' to defendant. 'Exhibit D,' a formal lease agreement, was signed by the president and attested by the secretary of the association but was never signed by the de-

fendant nor was it returned to the association. 'Exhibit D' is not in conformity with 'Exhibit A' as to renewal options. There is no direct evidence as to when defendant took possession of the 'Pine Theatre' side but 'Exhibit D' provides for a 3 year term beginning July 1, 1961 and the rent payment for the full month of July, 1961, was made. Defendant was therefore in possession when he received 'Exhibits C and D.'

"None of the 'Exhibits A, B, C, or D' were ever recorded. During the month of July, 1962, the plaintiffs bought the property. Both plaintiffs had knowledge of defendant's occupancy but neither of them made inquiry of him as to his tenancy or what rights he claimed in the property. The defendants had conversations from time to time thereafter but the tenancy was never discussed. Plaintiffs accepted the rent payments beginning in August, 1962, and continuing through March of 1964.

"On October 10, 1963, one of the plaintiffs wrote defendant telling defendant that there was a lease to him which plaintiffs had never seen; which expired December 31, 1963, and which plaintiffs were cancelling as of the expiration of the lease, and further stating plaintiffs would continue to rent to defendant.

"In response to this letter defendant took 'Exhibit A' to the plaintiffs and told them he was relying upon it. On November 20, 1963, plaintiffs had their attorney write and send to defendant * * *" a letter, Exhibit "G," advising that:

"This property was conveyed to Sanford B. Cook and Raimon E. Cook on July 31, 1962 by Warranty Deed without any exceptions or reservations and certainly there was no lease on the property and there is none now for the lease which was submitted to you by the Building and Loan Association was not executed by you, and the letter upon which you relied as claiming some renewal benefits was dated June 23, 1961, ap-

proximately a week before the date of the draft of the lease which was unacceptable to you."

The court further found that:

"On December 31, 1963, defendant wrote to plaintiffs, (Defendant's Exhibit 1), and stated that he was exercising the options granted to him in 'Exhibit A.' On February 1, 1964, plaintiffs, by their attorney, again demanded possession * * *. On March 20, 1964, defendant was served with a notice to quit * * * and this action was filed June 22, 1964. Rent for the month of March, 1964, was the last month plaintiffs accepted rent from defendant. Subsequent to March 1964, rent payments were sent to Plaintiffs by defendant. Such checks were refused and returned to defendant.

"In connection with the preparation of 'Exhibit A,' defendant testified that he had talked to four or five directors of The Salida Building and Loan Association and they all verbally approved. This is not disputed. Defendant further testified that upon receipt of [the unsigned formal letter] * * * he talked to Jacobs and was promised that 'Exhibit D' would be redrafted to conform to 'Exhibit A.' This was denied by Jacobs.

"Jacobs conducted all negotiations relative to the leasing and sale of the property on behalf of the building and loan association and managed the property while it was owned by the association."

▇▇▇▇ The court's FINDINGS OF FACT are well documented and supported by the evidence. We are bound by these findings.

▇▇▇▇ The trial court, in its CONCLUSIONS OF LAW, stated:

"The question of whether or not 'Exhibit A' is adequate as a lease agreement is resolved in the affirmative. The case of *Carlson v. Bain* 116 Colo. 526 states as follows, to-wit:

'Under the authorities, to create a valid contract of lease but few points of mutual agreement are necessary; first, there must be a definite agreement as to the

extent and bounds of the property leased; second, a definite and agreed term; and third, a definite and agreed price of rental and the time and manner of payment. These appear to be the only essentials, * * *'

"The reference to 'The Old Pine Theatre building' in 'Exhibit A' is sufficient to describe the property. The proposed formal lease 'Exhibit D' uses almost the same words at the top of page two, to-wit: 'The Pine Theatre.' The term of the lease is definite and certain.

"As to the third requirement, the rental is $75.00 per month for the 'Pine Theatre side' and the side in defendant's possession is $50.00 per month. Payment is to be monthly.

"The case of *American Mining Co. v. Hemrod-Kimball Mines*, 124 Colo. 186 [relied upon by plaintiffs], does not mention *Carlson v. Bain Id.*, but upon careful reading, they are not in conflict.

"The American Mining case states that the 'Essential elements' of a lease agreement depend in each case upon the facts and circumstances as they reveal the intent of the parties. Further, what the parties intended with regard to further or additional negotiations.

"In the case now under consideration the parties certainly intended that the terms of 'Exhibit A' be embodied in a formal agreement However, the defendant with consent of the landlord took possession of the 'Pine Theatre Side.' 'Exhibit B' does not mention additional negotiations. Some twenty days after 'Exhibit A' was approved the landlord sent 'Exhibit D' to the defendant and never bothered to find out if it was executed. This does not suggest contemplated additional negotiation. The defendant testified that after the formal lease, 'Exhibit D,' was delivered to him he was promised that it would be changed to conform to 'Exhibit A.' Rent was paid by defendant to the association for a year before the building was sold to present plaintiffs. These facts and circumstances prove the intent to be bound under 'Exhibit A.' The defendant

had dealt with the association as a tenant for some time prior to discussion of the 'Pine Theatre' side. There is nothing in the type of property or business involved here which would create extraordinary lease terms.

"It is the conclusion of the Court that the association was bound by the action of Jacobs. It was the testimony of Jacobs that he managed the cooperate property, that defendant had always dealt with him. Further, that he, Jacobs, had talked to some of the association directors about 'Exhibit A' and they assented. Jacobs attempted to avoid 'Exhibit A,' by stating that he did not know it contained an option. Nevertheless, he did approve it. Defendant testified that he talked to five or six directors about the terms of 'Exhibit A' and they all assented to it prior to its approval by Jacobs. The plaintiffs testified that all of their negotiations relative to purchase of the property was with Jacobs.

"It is the further conclusion of the Court that the present plaintiffs are bound by the terms of 'Exhibit A.' Defendant's possession placed them on inquiry. 92 C. J. S., PP 285; 8 Colo. 343; 55 Colo. 287; 109 Colo. 467. The plaintiffs were in contact with defendant many times, but never made inquiry of him as to what rights he claimed in the property. As early as November or December, 1962, the plaintiffs knew that defendant was claiming an option right under 'Exhibit A,' but they continued to accept rent through March of 1964. The right to the options contained in 'Exhibit A' were binding on the association and could not be extinguished by conveyance to third persons where those persons had notice or were upon inquiry."

The court with sufficient thoroughness disposed of plaintiffs' assignments of error 1 and 3. However, because the plaintiffs have placed great emphasis on assignment 2, we will amplify the trial court's treatment of that phase of its conclusions of law.

The thrust of plaintiffs' argument is that only by the formal action of the board of directors of the as-

sociation could Jacobs be authorized to enter into a lease with the defendant. Admittedly, there was no formal action on the part of the board. The question, as we view it, is limited to whether, under the facts here, the lease was a valid agreement as between the parties privy to it, *i.e.*, the defendant and the association. This is so because the plaintiffs were put on notice as to whatever possessory rights the defendant might have by virtue of defendant's occupancy of *the property*. If the lease was good as between the parties to it, the plaintiffs have no better standing to attack the lease than the association would have had prior to transfer of title to the plaintiffs.

 The facts here warrant the inference that the corporation ratified the lease of its general agent. Consequently the corporation would be estopped to deny that he lacked authority to enter into the lease. *McCoy v. Pastorius,* 125 Colo. 574, 246 P.2d 611; *Colorado Finance Co. v. Bennett Oil Co.,* 110 Colo. 1, 129 P.2d 299; *Dick v. Petersen,* 90 Colo. 83, 6 P.2d 923; *Mulford v. The Torrey Exploration Co.,* 45 Colo. 81, 100 P. 596. Also, it seems perfectly clear from the evidence that Jacobs was acting within the apparent scope of his authority both in negotiating for the lease and in executing the "Accepted" copy of Exhibit "A" and Exhibit "B"; therefore, the association is bound by his acts. *Commercial Standard Insurance Co. V. Rinn,* 100 Colo. 76 65 P.2d 705.

We have examined the authorities on which the trial judge arrived at the law applicable to the facts as he found them. With the addition of those cases which we have cited, they correctly state the law of this state. The assigned errors are without merit.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE DAY and MR. JUSTICE MCWILLIAMS concur.