530 P.2d 1302 (1974)
John H. MOONEY and Rosemary Mooney, Plaintiffs-Appellees,
v.
Barry CRADDOCK, Individually, et al., Defendants-Appellants.
No. 74-011.
Colorado Court of Appeals, Div. III.
November 19, 1974.
Rehearing Denied December 10, 1974.
Moyers, Kirkman & Henley, William H. Kirkman, Jr., Colorado Springs, for plaintiffs-appellees.
Goodbee & Mason, Robert J. Mason, Colorado Springs, for defendants-appellants.
Selected for Official Publication.
RULAND, Judge.
Defendant Barry Craddock, d/b/a Craddock Development Company (Craddock), appeals from a judgment entered after a trial to the court for damages in the amount of $19,500 awarded to plaintiffs *1303 for breach of a contract to lease. We affirm in part and reverse in part.
The trial court's findings, which are supported by the evidence, establish the following sequence of events which prompted the present controversy. While serving in the armed services, plaintiff John Mooney developed skills at handball and racketball and thus became interested in establishing an athletic club after his retirement to provide facilities and instruction for these and other athletic activities. In March of 1972, Mooney, who was almost eligible for retirement, visited Colorado Springs where he discussed his interest in managing an athletic club with a real estate salesman. At that time, Craddock, an experienced real estate developer, was in the process of constructing an office building which was to include an athletic club. The salesman therefore advised Fred Norton, Craddock's employee, of Mooney's interest.
Mooney returned to his post in Germany. He and Norton communicated thereafter by correspondence and long-distance calls, and, based on these communications, Mooney concluded that he and his wife could negotiate a lease for an athletic club. He retired from the service (thus forfeiting certain accrued leave pay) and returned to Colorado Springs to pursue the negotiations.
Discussions followed in Colorado Springs between Mooney, Norton, and Craddock at Craddock's offices. The major points to be resolved were the amount of rental and the erection of an auxiliary building in connection with the main building to house additional handball and squash courts. At the urging of Norton, Mooney was advised to project the type of facilities required to generate $12,000 per year income to Mooney. Upon review of Mooney's proposals as to the number and types of facilities necessary, Craddock replied, "Let's go."
Following these discussions, Norton prepared and mailed to Mooney a letter dated August 21, 1972. Insofar as relevant here, the letter states:
"For the Executive Athletic Club we will provide the complete facilities including courts, pool, showers, floor covering etc., except for items you are to furnish. These will be the lockers, weight and excercise [sic] equipment, game and lounge tables and chairs, sauna and/or steam baths, washer and dryer, towels, and day to day supplies.
"Rent will be at the rate of $2.25 per square foot for the first year including insurance and taxes. For the second and following years it will be $2.50 per square foot until your personal income from all sources within the facility reaches $12,000 gross per year. At such time that your personal gross income from this operation reaches $12,000 per year, any excess shall be divided 50/50 with us until such time that our rent reaches $3.00 per square foot. Any excess thereafter is yours.
"The base term at above rent structure shall be for five years. . . .
"As soon as I meet with Frampton's man and we have the rear building designed I will let you know. . . ."
Mooney was instructed to execute one copy and return it to Norton if the letter conformed to the understanding of the parties. Mooney proceeded accordingly.
Mooney then moved his wife and children from Germany to Colorado Springs and began preparations for opening an athletic club, including such items as obtaining sizable loans to purchase equipment, purchasing materials for and installing a sauna in the main building, preparing printed brochures and mailing of same to prospective members of the athletic club, making an extended trip to California to meet with suppliers of equipment and other items utilized in athletic clubs, and joining various organizations to promote the venture. These activities continued through December of 1972.
Craddock's architect was to prepare drawings and blueprints for the auxiliary building, but because of Craddock's other projects, no blueprints or drawings had *1304 been completed by October 1972. At that time, Mooney suggested several changes in the auxiliary building, principally for the purpose of substituting two handball courts for the two squash courts originally contemplated.
The printed brochure was mailed to prospective members in December, and within a week thereafter only three responses had been returned. Upon learning of the lack of responses, Norton informed Mooney that the project could not be completed as originally discussed and imposed a minimum membership requirement as a condition for erection of the auxiliary building.
The Mooneys filed this action for damages, alleging that Craddock had agreed to construct and lease an athletic club to the Mooneys and that the Mooneys had expended substantial amounts of time and money in reliance on this agreement. Prior to trial, the claim against Norton was dismissed leaving Craddock as the sole defendant. Craddock's answer raised various affirmative defenses and alleged that the parties never agreed upon the terms of a contract to lease.
A number of witnesses called by Mooneys testified and the trial court found that the athletic club would have been a success had it opened as contemplated. Testimony was presented by both parties relative to all of their discussions and correspondence leading up to and following execution of the August 21 letter. The trial court then determined that the parties had reached an enforceable contract to lease, that Craddock had breached the contract, and that Mooneys were entitled to recover damages in the amount of $19,500.

I Validity of the Contract to Lease
Craddock contends that the trial court erred on numerous grounds in determining that the parties had reached mutual agreement on all essential terms of the contract to lease. Only two of Craddock's contentions have merit.
The main building being constructed by Craddock at the time the parties initiated their negotiations was to contain one handball court plus other facilities, including a swimming pool. The trial court found, and competent evidence supports the trial court's finding, that the auxiliary building was originally planned to contain about 2,400 square feet. However, the trial court also concluded that Craddock's breach of contract consisted of his failure to erect a building sufficient to house four handball courts. The record reflects that the interior dimensions of a handball court are 20 by 40 feet, and thus four handball courts would require 3,200 square feet in the auxiliary building. There is also evidence that hallways for access to the handball courts, galleries for spectators to observe matches, and other facilities were discussed but not agreed upon relative to the auxiliary building. It thus appears that the parties did not reach complete agreement on the number of square feet required for the auxiliary building.
In addition to lack of mutual agreement as to the size of the auxiliary building, Craddock points out that the August 21 letter fails to specify the time and manner of payment by Mooney of the agreed rental. The trial court made no findings relative to this aspect of the contract. Mooneys suggest here that since the August 21 letter is silent on this issue, we must imply that the rental payments would commence as soon as the building was completed. We find no legal authority supporting this position, and Mooneys cite none. In those jurisdictions which supply an implied agreement as to time and manner of rental payment in leases which contain no express covenant on this subject, the conclusion is that rent is not payable until the end of each term. See Bernard v. Triangle Music Co., 1 Wash.2d 41, 95 P.2d 43. In this jurisdiction, our Supreme Court has consistently held that express agreement both as to dimensions of the leased property and the amount, time, and manner of rental payments is prerequisite to a binding lease. See, e.g., Carlson v. Bain, 116 Colo. 526, 182 P.2d 909; see also Cook v. Hargis, 164 Colo. 368, 435 P.2d 385. Hence, Mooneys' *1305 claim that the parties reached mutual agreement as to all essential terms of a contract to lease must fail.

II Promissory Estoppel
Since the August 21 letter as supplemented by the testimony of the parties fails to establish mutual agreement upon all essential terms of a contract to lease, Craddock contends that Mooneys' complaint should be dismissed and that the trial court was in error in not so ruling. We disagree.
Mooneys' complaint alleges, the trial court found, and there is substantial evidence to support the finding that in reliance on Craddock's promise to construct an athletic club which Mooney could lease and operate, Mooney made substantial expenditures of time and money for purchase of equipment and other items as well as for promotion of the venture. Both Craddock and Norton knew that Mooney was devoting his time and making the expenditures in reliance on these commitments. In our view, these circumstances support the trial court's determination that Mooneys are entitled to recovery. The legal theory supporting this recovery is the doctrine of promissory estoppel contained in the Restatement of Contracts, § 90, as follows:
"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."
The doctrine was first formulated in 1920 and has been applied in numerous decisions since. See B. Boyer, Promissory Estoppel; Requirements and Limitations of the Doctrine, 98 U.Pa.L.Rev. 459; S. Henderson, Promissory Estoppel and Traditional Contract Doctrine, 78 Yale L.J. 343. Insofar as pertinent here, the purpose of the doctrine is to assure fairness in business transactions by protecting one who relies to his detriment on the promise of another. See Goodman v. Dicker, 169 F.2d 684 (C.A.D.C.); Peoples National Bank v. Linebarger Construction Co., 219 Ark. 11, 240 S.W.2d 12. In order to invoke the remedy authorized by this doctrine, it is not necessary to establish mutual agreement by the parties on all essential terms of a contract. Hoffman v. Red Owl Stores, Inc., 26 Wis.2d 683, 133 N.W.2d 267. In our view, the doctrine should be applied to prevent injustice where, as here, a promise was made which the promisor should reasonably have expected would induce action or forbearance of a material character and the promise in fact induced such action or forbearance.

III Measure of Recovery
The recovery awarded by the trial court was based on anticipated profits from operation of the athletic club for the first year, together with an additional award of $1,500 per year for the remaining four years of the lease, and an award of the fair market value of the sauna installed by Mooney in the existing building. However, the evidence was insufficient to establish loss of net profits with reasonable certainty. See Lee v. Durango Music, 144 Colo. 270, 355 P.2d 1083. Moreover, since the purpose of the doctrine of promissory estoppel is to rectify the plaintiff's detrimental change of position, the proper measure of recovery under the circumstances of this case is an award of damages sufficient to compensate for the actual loss sustained as measured by expenditures made together with the market value of the sauna which accrued to the benefit of Craddock. See Goodman v. Dicker, supra; Hoffman v. Red Owl Stores, Inc., supra.
The judgment is affirmed insofar as the trial court determined liability on the part of Craddock; the cause is reversed and remanded with directions to the trial court for such further proceedings as it may deem expedient to establish Mooneys' damages consistent with the views herein expressed.
VanCISE and KELLY, JJ., concur.