In re BALDUCCI OIL COMPANY, INC., Debtor.

Richard T. ECKLES, Trustee, Plaintiff,

v.

PETCO INC., INTERSTATE, Defendant.

Bankruptcy No. 82 B 1319 C.
Adv. No. 83 G 0509.

United States Bankruptcy Court,
D. Colorado.

Sept. 16, 1983.

Mark Fulford, Sherman & Howard, Denver, Colo., for Richard T. Eckles, Trustee.

Michael Hensick, of Kissinger & Lansing, Denver, Colo., for Petco, defendant.

## MEMORANDUM OPINION

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER comes before the Court on the Trustee's Motion for Summary Judgment filed by Richard Eckles, Chapter 7 Trustee for the Debtor, Balducci Oil Company, Inc. (hereinafter "Balducci"). Balducci filed for protection under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* on March 31, 1982. The Trustee for Balducci has initiated a myriad of avoidance actions in which he seeks to recover substantial sums for equitable distribution to allowed unsecured claimants. This adversary proceeding arises out of the commercial relationship between Balducci, Petco Inc., Interstate (hereinafter "Petco") and Pinon Gas Company (hereinafter "Pinon"). The Trustee filed a Complaint to avoid as a preferential transfer to Petco, a setoff by Petco of $16,464.02, on March 24, 1982. Petco answered and alleged that it legally set off a substantial portion of the amount sought, under § 553 of the Code. Subsequently, Petco and the Trustee entered into a "Joint Stipulation of Facts" and Eckles interposed a Motion for Summary Judgment thereupon.

## I. FACTS

The parties have entered into a "Stipulation of Facts" which, they contend, disposes of all material issues of fact in this proceeding. The pertinent parts are reproduced herein:

1. Plaintiff is the duly appointed, qualified, and acting Trustee in the bankruptcy of Balducci Oil Company, Inc. ("Balducci"), the Debtor in a bankruptcy proceeding commenced March 31, 1982.

2. Petco was a creditor of Balducci.

3. On or about November 12, 1981 Petco provided services to Balducci for which Balducci owed Petco $751.33. As of January 1, 1981 (sic), 90 days before Balducci's bankruptcy petition on March 31, 1982, Balducci owed Petco the $751.33.

4. On or about January 19, 1982 Petco provided transportation services to Balducci for which Balducci owed Petco $520.98.

5. On or about January 20, 1982 Petco's wholly owned subsidiary Pinon Gas Company ("Pinon") sold Balducci $13,873.86 worth of low lead aviation gasoline.

6. Pinon's relationship to Petco is as follows:

    (a) Its stock is owned 100% by Petco;

    (b) Both have identical officers and directors;

    (c) Pinon has no employees, all are employed by Petco;

    (d) All Pinon's expenses of operation are paid by Petco;

    (e) Pinon has no separate capitalization from Petco;

    (f) Pinon maintains no substantial corporate existence separate from that of Petco.

7. On or about March 10, 1982 Balducci sold to Petco $8,233.38 worth of No. 2 diesel fuel.

8. On or about March 11, 1982 Balducci sold to Petco $8,230.64 worth of diesel fuel.

9. The March 10 and 11 sales by Balducci were in the ordinary course of business of both Petco and Balducci, were made for new value, were not made for

the purpose of creating a setoff between the parties, nor were they on account of an antecedent debt.

10. On March 24, 1982, Balducci's comptroller demanded immediate payment from Petco for the March 10 and 11, 1982 sales of diesel fuel. Petco told Balducci that Petco would setoff the cost of the March 10 and 11 sales, totaling $16,464.02, against the amounts owed Petco and Pinon, totaling $15,146.17.

11. Interest in the amount of $574.56, at the rate of 21 percent (21%) per year, accrued against Balducci on account of Balducci's unpaid account with Petco.

. . . .

13. Petco paid First National Bank of Denver $743.59 on or about July 13, 1982, pursuant to the bank's demand based upon the Bankruptcy Court's May 19, 1982 order modifying stay in adversary proceeding 82J0953, permitting the bank 'to enforce its security interest against any interest of [Balducci] in the property set forth in the Complaint.' This amount was arrived at after the March 24, 1982 setoff by also deducting the interest referred to in paragraph eleven (11) above.

14. The claims of Petco and Pinon against Balducci were not transferred by an entity other than Balducci to Petco and Pinon.

. . . .

## II. SUMMARY JUDGMENT

■ Fed.R.Civ.P. 56 applies herein through newly enacted Fed.R.Bankr.P. 7056. Pursuant to Fed.R.Civ.P. 56(c) stipulations are considered to be admissions and are a proper evidentiary basis upon which to interpose a motion for summary judgment. *F & D Property v. Alkire,* 385 F.2d 97 (10th Cir.1967); *Stone v. Maher,* 527 F.Supp. 10 (D.C.Conn.1980).

■ Summary Judgment is a drastic remedy (*Jones v. Nelson,* 484 F.2d 1165, 1168 (10th Cir.1973) only available where there exists no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Adickes v. Kress and Company,* 398 U.S. 144, 157–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142

(1970); *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1383 (10th Cir.1980). The burden is on the movant to show that he is entitled to judgment, as a matter of law, beyond all reasonable doubt. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980); *S.E.C. v. International Mining Exchange Inc.,* 515 F.Supp. 1062, 1065 (D.C.Colo.1981). While I can determine legal consequences of undisputed facts, I must deny the motion if a triable issue of fact exists. *Carpenters & Millrights Health Benefit Trust Fund v. Domestic Insulation Co.,* 387 F.Supp. 144, 147 (D.C.Colo.1975). Finally, the stipulation and all influences therefrom must be construed in favor of the party against whom the motion is made. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980). With these principles of procedure in mind, I turn to the substantive issues.

## III. SETOFF UNDER THE BANKRUPTCY CODE: § 553

■ A general discussion of the doctrine of setoff is a logical starting point in light of its complexity and the absence of precedent in this district. The Bankruptcy Code, like the Bankruptcy Act, does not itself create a right of setoff. Rather, it preserves the pre-existing common law right of setoff, subject to some limitations. *In re Donato,* 17 B.R. 708 (Bkrtcy.Va.1982); *In re Tonyan Construction Co. Inc.,* 28 B.R. 714 (Bkrtcy.Ill.1983). In Colorado, the doctrine of setoff has long been recognized. *Thatcher v. Rockwell,* 4 Colo. 375, *appeal dismissed* 105 U.S. 467, 26 L.Ed. 949 (1878); *Walter E. Heller & Co. v. Lindsey,* 146 Colo. 452, 361 P.2d 979 (1961). Section 553 is not self-executing; affirmative acts must be taken by the creditor which evidence a clear intent to setoff. *In re McCormick,* 5 B.R. 726 (Bkrtcy.Ohio 1980) citing *Baker v. National City Bank of Cleveland,* 511 F.2d 1016 (6th Cir.1975); 4 *Collier on Bankruptcy,* ¶ 553.02 at 553–10 (15 ed. 1982). In this case, there is no dispute on this issue. Finally, the burden of proof is on the creditor asserting the setoff right to show that it comes within the confines of § 553. *In re*

*Carpenter,* 14 B.R. 405 (Bkrtcy.Tenn.1981); *In re Wilson,* 29 B.R. 54 (Bkrtcy.Ark.1982).

■ Three important bankruptcy limitations have been placed upon the right of setoff by § 553. First and foremost is the requirement that only "mutual debts" may be setoff. That is, the debts must be due between the same parties acting in the same capacity. § 553(a); *In re Dartmouth Nursing Home,* 24 B.R. 256 (Bkrtcy.Mass. 1982); 4 *Collier on Bankruptcy,* ¶ 553.04[4] at 553–10 (15th ed. 1982); Ahart, *Bank Setoff Under The Bankruptcy Reform Act of 1978,* 53 Amer.Bankr.L.J. 205, 215–218 (1978). "For mutuality to exist, each party must own his own claim in his own right severally, with the right to collect it in his own name against the debtor or in his own right." *In re Virginia Block,* 16 B.R. 560, 562 (Bkrtcy.Va.1981). Also, the requirement of mutuality is strictly construed under the Code. *Virginia Block, supra,* at 562.

The second group of limitations on the right of setoff under § 553(a) is that a creditor may not procure a claim against the debtor within 90 days of the date on which the petition is filed if the debtor was insolvent. § 553(a)(2). Also, the creditor may not incur a debt against the debtor while the debtor was insolvent, within 90 days of the date of which the petition is filed, for the purpose of effecting a setoff. § 553(a)(3). Section 553(c), like § 547(f), creates a presumption of insolvency on and during the 90 days immediately preceding the date on which the petition is filed. This subsection is not relevant to a determination of the issues herein.

The third limitation is commonly referred to as the "insufficiency test." The mathematical application of this subsection is similar to the "improvement in position" test used to determine the voidability of pre-petition transfers to creditors who have perfected security interests in inventory and accounts receivable. *See* § 547(c)(5). The § 553(b)(1) insufficiency (insufficiency is defined in § 553(b)(2) as the, "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim") test has been described as follows:

The limitation invalidates or precludes the setoff of any amount that is a betterment in the creditor's 'secured' position during a 90 day pre-petition period. The amount of any such improvement is treated as an ordinary unsecured claim. The test requires determination of the creditor's 'insufficiency' at two points in time: 1) the later of 90 days before petition or the first date during that 90 days on which there is an insufficiency; and 2) the date of setoff, whether on the date of petition or within the 90 days immediately preceding. To the extent that the insufficiency at setoff is less than it was at the earlier date, a setoff will be invalid.

■ Comment, *Setoff in Bankruptcy; Is the Creditor Preferred or Secured?,* 50 U.Colo.L.R. 511, 522 (1980). Any recovery by the estate under § 553(b) is limited to the amount setoff. 4 *Collier on Bankruptcy,* ¶ 553.08 at 553–45 (15th ed. 1982). The purpose of this test is to recover, as preferences, setoffs which occur within 90 days of the date of filing the petition and which improve the creditor's position vis-a-vis other creditors.

The final material aspect of the doctrine of setoff under the Code is the effect of creditor forebearance of the right to setoff before bankruptcy. Pursuant to § 506(a), "An allowed claim of a creditor . . . . that is subject to setoff under § 553 of this title, is a secured claim . . . . to the extent of the amount subject to setoff." So, if a creditor waits until a petition in bankruptcy is filed, it will receive an allowed secured claim in the amount subject to setoff. The purpose of this provision is to protect the estate in the frantic days before a petition is filed.

## IV. CAN THE SETOFF ITSELF BE RECOVERED AS A VOIDABLE PREFERENCE UNDER § 547?

■ The legal basis for the Trustee's Complaint, Amended Complaint and Motion for Summary Judgment is that the setoff by Petco on March 24, 1982, was, itself, a transfer that is voidable under § 547. I

hold that § 547 may not be used to avoid the setoff itself. The general reason is that Congress defined "transfer" in § 101(40) to exclude setoffs. If the act of setoff is not a "transfer"; the preference test under § 547 cannot be satisfied because there was no transfer of property of the debtor—the initial element of § 547(b).

Under the Bankruptcy Act, setoffs were generally not voidable as preferential transfers. *Jansen v. State Bank of Allison,* 518 F.2d 1 (8th Cir.1975); *In re Carnell Construction Co.,* 424 F.2d 296 (3rd Cir.1970). In fact, an assertion of the right of setoff was a valid defense to a preference action. (*Issel v. City of Cincinnati,* 476 F.Supp. 474, 495 (D.C.Ohio 1979). However, two critical defects in § 68a of the Act, the predecessor to § 553, led to its revision. The setoff upset the scheme of equitable distribution and bankruptcy policy with respect to recovery of preferences. The drafters continued to recognize the doctrine of setoff but they imposed the limitations detailed above on its exercise.

The original House of Representatives draft of the Code contained in H.R. 8200 specifically included setoff in the definition of "transfer." House Report 8200, 95th Congress, 1st Sess., September 8, 1977. The Senate version of the Code found in S. 2266, Senate Report 95–989, 95th Congress, 2nd Sess. (1978) deleted the word setoff from the definition of "transfer." The explanation for the deletion was given in the Senate Debate on the Compromise Bill, 124 Cong.Record S17403–34 (daily ed. October 6, 1978) by Senator DeConcini. At S17407 he stated:

> Section 101(40) defines 'transfer' as in the Senate Amendment. The definition contained in H.R. 8200 as passed by the House included 'setoff' in the definition of transfer. Inclusion of 'setoff' is deleted. The effect is that a 'setoff' is not subject to being set aside as a preferential transfer but will be subject to special rules.

The clear legislative intent cannot be gainsaid. Section 553(b), the insufficiency test, contains the "special rules" and is, in essence, a miniature preference provision akin to § 547(c)(5). That legislative statement, which was an attempt to cure the preference dilemma under the Act, led one bankruptcy court to comment:

> The effect of this Subsection [§ 553(b) ] is to allow the Trustee to recover the setoffs which advance the position of one creditor at the expense of all other creditors during the ninety day period before bankruptcy. It works hand-in-hand with the philosophy of Section 547.

*In re Schmidt,* 26 B.R. 89, 92 (Bkrtcy.Minn. 1982).

■ Hence, if the Trustee recovers any portion of the setoff, § 547 will not be the vehicle of recovery. Instead, if any amount is returned, it will be because of defects in the setoff itself, whether they be excessive amounts of setoff or absence of entitlement to setoff. Even though I am ruling on a motion for summary judgment, if there are no genuine issues of fact, I may enter judgment although on a different legal ground. *Broderick Wool Products v. U.S.,* 195 F.2d 433, 436 (10th Cir.1952); *Crowder v. U.S.,* 255 F.Supp. 873, 874 (D.C.Cal.1964) *aff'd* at 362 F.2d 1011 (4th Cir.1966).

V. ARE THE DEBTS OWED TO PETCO AND PINON BY BALDUCCI AND THE DEBTS OWED TO BALDUCCI BY PETCO AND PINON "MUTUAL DEBTS" WHICH PETCO MAY SETOFF UNDER § 553?

On the date of setoff, March 24, 1982, Balducci owed Petco $1,272.31 and Pinon $13,873.86. Petco owed Balducci $16,464.02 and Pinon owed Balducci nothing. Petco setoff $16,464.02, the entire amount of its indebtedness to Balducci against $1,272.31, the amount Balducci owed Petco *and* $13,-873.86, the amount Balducci owed Pinon. Petco admits these facts. Thus, the issue here is whether the debts running between Balducci, Petco and Pinon were mutual debts between the same parties acting in the same capacity.

■ In general, "It is well established that one subsidiary may not setoff a debt

owed to a bankrupt against a debt owing from the bankrupt to another subsidiary." *Depositors Trust Co. v. Frati Enterprises,* 590 F.2d 377, 379 (1st Cir.1979). Petco seeks to pierce or disregard the corporate veil of Pinon to hold that Petco and Pinon were a single economic entity for purposes of the § 553 mutuality test. Petco argues that the general rule should not apply because Pinon is a wholly-owned subsidiary, without separate capitalization, without its own officers and employees and Petco pays all expenses of Pinons' operations.

In Colorado, "The alter-ego doctrine is a means by where creditors may hold stockholders personally liable for corporate obligations. It comes into play in cases where the corporate entity was used to defeat public convenience, or to justify or protect wrong, fraud or crime." *Rosebud Corp. v. Boggio,* 39 Colo.App. 84, 88, 561 P.2d 367 (1977). In *Contractors Heating v. Scherb,* 163 Colo. 584, 432 P.2d 237 (1967) the Colorado Supreme Court held, "Standing alone, informalities in the conduct of a corporate business do not form a basis for piercing the corporate form. The evidence in the record of this alone without fraud or some other wrong being perpetrated is insufficient to hold Mrs. Scherb personally liable." *Scherb, supra* at 587, 432 P.2d 237. Hence, under the corporate law of the state of Colorado, a corporate officer may not pierce the corporate veil at his whim or caprice or to perpetrate fraud. *Colorado Finance Co. v. B.F. Bennet,* 110 Colo. 1, 129 P.2d 299 (1942). Petco has cited no case where a court allowed a corporation to pierce its own veil or the veil of a subsidiary to achieve desired ends. Thus, as a matter of corporate law, without alleging fraud or some other wrong, Petco will not be allowed to disregard Pinon's corporateness to establish mutuality of obligation.

However, the courts' interpreting the term "mutual debts" have carved an exception to the general rule in the "triangular tradeoff situation." The courts have found mutuality between three parties, as a matter of contract law, where there was an express contractual agreement clearly evincing the intent of the parties to treat the parent and subsidiary as one entity. *Depositors Trust, supra; In re Berger Steel,* 327 F.2d 401 (7th Cir.1964); *In re Virginia Block, supra.* In response to an argument that a parent corporation may pierce the veil of its subsidiary for purposes of establishing mutuality, the Ninth Circuit held:

> Under § 68a only claims to and from the same creditor and in the same capacity may be set off, [citation omitted] wherever the corporate 'veil' may be 'pierced' for purposes of the usury statute .... In the case at bar, ... the referee specifically found that although AIF and TWF were controlled and dominated by the same person, the two corporations 'were at all relevant times separate legal entities.' Hence, the debts are not 'mutual' and may not be offset against each other.

*Matter of Vehm Engineering,* 521 F.2d 186, 190–191 (9th Cir.1975).

In my view, this language completely bars Petco's efforts to pierce the veil of Pinon.

## VI. CONCLUSION

Based upon the foregoing authorities, the briefs of the parties and the stipulation, construing the stipulation in favor of Petco, I conclude there is a genuine issue of material fact to be resolved. That is—Was there an express agreement between Balducci, Petco and Pinon to treat Petco and Pinon as one entity? The stipulation is silent as to the existence of such an agreement. The existence of such an agreement is critical to the application of the mutuality standard under § 553. A court should deny summary judgment until the facts have been sufficiently developed to enable it to be certain it is making a correct determination of the law. *NLRB v. Smith Industries, Inc.,* 403 F.2d 889, 893 (5th Cir. 1968).

Therefore, the Trustee's Motion for Summary Judgment is DENIED and trial will be scheduled and conducted consistent with the views expressed herein.