**GREEN SHOE MANUFACTURING COMPANY, a foreign corporation, Petitioner,**

v.

**Joseph FARBER, d/b/a Joseph Farber and Associates, Respondent.**

**No. 83SC368.**

Supreme Court of Colorado, En Banc.

Jan. 21, 1986.

McDonald & Cox, Phyllis Cox, Grant, McHendrie, Haines & Crouse, Denver, for petitioner.

Berenbaum & Weinshienk, Charles A. Brewley, Denver, for respondent.

ROVIRA, Justice.

We granted certiorari to review the court of appeals opinion in *Farber v. Green Shoe Mfg. Co.*, 677 P.2d 376 (Colo.App.1983), holding that a guarantor remains liable on its guarantee of a commercial lease, under a broad consent-for-modifications clause, despite significant changes in both the demised premises and the parties bound by the lease agreement. The court of appeals held that such changes constitute an amendment to the original lease within the scope of the consent-for-modifications provision, and did not discharge the guarantor. We reverse.

## I.

In July 1967, S and L Junior Bootery, Inc. (S and L), a Colorado corporation, and William O. Smith leased space in the University Hills South Shopping Center from respondent Joseph Farber and Associates. Smith signed a lease both as president of S and L and in his individual capacity. Petitioner, Green Shoe Manufacturing Co. (Green Shoe), which sold its products through S and L, executed a guarantee of performance under the lease in August 1967. The guarantee contained a broad consent-for-modifications clause:

The undersigned [Green Shoe] does hereby waive each and every notice to which he might otherwise be entitled under said Lease and expressly consents to any extension of time, leniency, modification, waiver, forbearance or change which may be made in any of the terms and conditions of said Lease by the parties thereto or by their successors or assigns. No such change, modification, extension or forbearance shall release the undersigned from any liability or obligation hereby incurred or assumed, and the undersigned expressly waives any notice of default in or under any of the terms of said Lease.

In early 1971, Smith sold his interest in S and L to William Miller and T.K. Richardson, who sought to move the business to a new location within the same shopping center that was nearly twice as large as the original store. In connection with this move, Farber executed an agreement with S and L that was labeled an "Amendment to [the 1967] Lease." That document was signed by Farber, as lessor, by R.J. Miller as president of S and L, as lessee, and by William Miller and Richardson, as guarantors.[1] Under this new agreement, the lessee agreed to pay significantly higher rents and fees for the larger store. None of the parties sought or obtained Green Shoe's consent to this "Amendment." In June 1972, the lessee defaulted on the lease payments. Farber responded by filing this action against the lessee for possession, delinquent rental payments, and future rents. It also sought to recover under the guarantee from petitioner and from William Miller and Richardson.

Based on the fact that Smith was not a party to the "Amendment" and the leased premises were different than the premises under the 1967 lease, the trial court determined that the 1971 agreement was in fact an entirely new lease and not a modification of the 1967 lease. On that basis, it concluded that the petitioner was discharged from its obligation as guarantor. The court of appeals reversed, holding that the 1971 agreement was a modification of the 1967 lease, and that the changes were within the guarantee's broad consent-for-modifications clause. *Farber v. Green Shoe Mfg. Co.*, 677 P.2d 376 (Colo.App. 1983).

---

1. Although the 1971 Amendment does not recite whether William Miller and T.K. Richardson signed as guarantors or lessees, Farber's original complaint asserts that they were guarantors. Since the record does not indicate that either Miller or Richardson ever filed an answer, and since the trial court never determined their status, we accept respondent's contention that they signed as guarantors.

## II.

The court of appeals correctly noted that while Colorado follows the general rule that modifications which were not contemplated by the guarantor can discharge the guarantor, it also recognizes the exception that, where a guarantee agreement contains a provision authorizing a change in the terms of the principal agreement, a change within the scope of that authorization does not discharge the guarantor. *First Commercial Corp. v. Geter*, 37 Colo. App. 391, 547 P.2d 1291 (1976). Thus, if the 1971 agreement was, as the court of appeals concluded, merely a modification of the original lease, then the modification would be within the scope of the consent-for-modifications clause and petitioner would remain bound by the 1967 guarantee. If, however, the 1971 agreement constituted a new lease, then petitioner would be discharged since the 1967 guarantee, which guarantees performance of the terms and provisions of "the foregoing Lease," clearly pertains to the lease that was in existence in 1967.

In determining whether or not the 1971 agreement was in fact a new lease, we are not bound by the fact that the agreement was labeled an "Amendment" to the 1967 lease. *See Morath v. Perkins*, 86 Colo. 101, 278 P. 611 (1929) (the title of a contract is no part of the instrument itself); *cf. Denver Joint Stock Land Bank v. Markham*, 106 Colo. 509, 107 P.2d 313 (1940) (specific provisions in contract express more exactly what parties intend than broad or general clauses). Moreover, the lease, guarantee, and "Amendment to Lease" were all drafted by Farber. Where the terms of a contract are ambiguous, they must be strictly construed against the party drafting the instrument. *Perl-Mack Enterprises Co. v. Denver*, 194 Colo. 4, 568 P.2d 468 (1977); *Christmas v. Cooley*, 158 Colo. 297, 406 P.2d 333 (1965). Thus, the fact that the 1971 agreement is presented in the form of an "Amendment" will not prevail over the substance of the agreement.

Petitioner asserts that the 1971 agreement was in fact a new lease for two reasons. First, the premises leased in 1971 were different from those demised in the original lease. Second, the absence of Smith as lessee rendered the agreement a new lease. We agree.

One of the primary characteristics of a lease is that it represents the surrender to the lessee of possession of the specific land or tenement leased. *Cook v. Hargis*, 164 Colo. 368, 435 P.2d 385 (1967); *Carlson v. Bain*, 116 Colo. 526, 182 P.2d 909 (1947); *see also* 49 Am.Jur.2d *Landlord and Tenant*, § 25 (1970). Under the 1967 lease a specific area within the shopping center was leased to S and L and Smith. Under the 1971 agreement, the lessee gained the right to occupy an entirely different space within the shopping center. No portion of the premises initially leased in 1967 formed a part of the newly leased premises in 1971.

Although we recognize that the effect of a change in demised premises on a guarantee such as the one before us is a matter of first impression for this court, we note that at least one other jurisdiction has held that a change in demised premises was outside of a guarantee's broad consent-for-modifications clause. *See York Manor Corp. v. Astorino*, 212 N.Y.S.2d 613 (N.Y.Sup.Ct. 1961). The *York Manor* court held, in circumstances similar to the case at bar, that:

A lease is nothing more than a grant from one person to another of the right to possession of property. As in any other conveyance it is the premises or subject matter which differentiates the realty transaction.... When a lease is reduced to such fundamental terms it becomes clear that when the premises are substituted, the result is not a "modification" but a new lease.

212 N.Y.S.2d at 614;[2] *compare Dyna-Comp Corp. v. Selig Enterprises, Inc.*, 143

---

**2.** The clause interpreted in *York Manor* read: "this guarantee shall remain and continue in

force and effect as to any renewal, modification

Ga.App. 462, 238 S.E.2d 571, 572 (1977) (enlargement of existing leasehold by roughly twenty percent fell within consent-for-modifications clause where original demised premises were included in the expanded leasehold, since definition of "modify" includes "to ... enlarge; extend"); *cf.* 3 M. Friedman, *Friedman on Leases* § 35.3 at 1437 (2d ed. 1983) (suggesting that, although cases involving modification of demised premises have held guarantees discharged on other grounds, a change in demised premises creates a new contract, destroying the contract that was guaranteed).

In attempting to refute petitioner's argument, respondent contends that because the space leased under the 1971 agreement and the space leased under the 1967 lease had the same mailing address, the premises had not been changed, and there was no new lease agreement. Clearly, this argument proves too much. Under respondent's proposed "mailing address" rule, carried to its logical extreme, Farber could have leased the entire shopping center to S and L, and still be deemed not to have executed a new lease, merely because the mailing address had not changed.

Although Green Shoe had reason to believe that the terms of the original lease might be modified, we do not believe that, in signing the guarantee agreement and consenting to "any modification," it contemplated a change in the very subject matter of the lease. *See* Black's Law Dictionary 905 (5th ed. 1979) ("Modify" defined as "To alter; to change in incidental or subordinate features; enlarge, extend; amend; limit, reduce. Such alteration or change may be characterized, in quantitative sense, as either an increase or decrease."). Since the demised premises are basic elements of a lease, a change in those premises, at some point, must result in the creation of a new lease. While we do not attempt to draw that line here, it is clear that where no part of the original premises

is covered by the new agreement, that new agreement goes beyond a mere modification of the original, and therefore falls outside of even a consent-for-modifications clause as broad as that contained in the 1967 guarantee.

The change in lessees between the two agreements further supports Green Shoe's argument that the second agreement constituted a new lease. While Green Shoe committed itself to guarantee the performance of both S and L and Smith as lessees under the July 1967 lease, the consent-for-modifications provision did not give Farber free reign to hold Green Shoe liable on a completely different contract. Upon examination, we conclude that the removal of Smith as lessee, with the result that Green Shoe could no longer rely on his performance,[3] along with the complete substitution of demised premises and the significant increase in the minimum rent and other costs borne by the lessee, combined to make the 1971 agreement much more than a modification of the existing lease.

In reaching the conclusion that the 1971 agreement was in fact a new lease, we are also mindful of the rule that "[t]he liability of the guarantor is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent. It has been said that a guarantor is like a surety, a favorite of the law." *Gandy v. Park National Bank,* 200 Colo. 298, 299, 615 P.2d 20, 21 (1980) (quoting *Burkhardt v. Bank,* 127 Colo. 251, 256 P:2d 234 (1953) ).

Although, by executing the guarantee with the consent-for-modifications clause, Green Shoe exposed itself to the possibility of significant modifications in the original lease agreement, that exposure was not infinite. The 1971 agreement made such fundamental alterations of the terms that are basic to a lease agreement that it constituted a new lease. Since Green Shoe's guarantee was specific to the 1967 lease,

or extension of this lease...." 212 N.Y.S.2d at 614.

3. Respondent apparently acknowledges that the 1971 "Amendment" discharged Smith, since he did not name Smith as a defendant when he brought suit on the 1972 default.

its guarantee obligation was discharged by the entry into a new lease in 1971.

The judgment of the court of appeals is reversed, and the cause is remanded for reinstatement of the judgment of the district court.