[No. 1942.]

## THE CITY OF DENVER v. WEBBER.

1. CITIES AND TOWNS—POWER TO EMPLOY SPECIAL COUNSEL.

A municipal corporation has power to employ special counsel to represent it in litigation. And the fact that an incorporated town may have already employed a regular town attorney, one of the duties of whom, as specified by resolution of the board of trustees, is " to represent the town in all legal proceedings before any and all courts of the state in which it may become involved," does not deprive such town of the power to employ special counsel to represent it in any case.

2. SAME—CONTRACTS—RATIFICATION.

Conceding but not deciding that the employment of special counsel to represent a town in any particular litigation comes within the meaning of the statute which requires that on every resolution or order to enter into contract by a board of trustees the yeas and nays shall be called and recorded, and that the concurrence of a majority of the whole number of members elected to the council shall be necessary to its adoption, yet, where counsel was employed by the affirmative vote of a majority of those present but not a majority of all the members elected, and at the same meeting the counsel so employed appeared and advised with the board concerning the litigation, and a resolution was passed by the affirmative votes of a majority of all the members elected, to furnish the counsel with a copy of the resolution of his employment, and by the affirmative votes of a majority of all the members a warrant was ordered drawn in his favor to be applied on costs and his fee in the case, the subsequent action of the board was a ratification of the act of employment.

3. CITIES AND TOWNS—APPROPRIATIONS—SPECIAL COUNSEL.

Section 4449, Mills' Ann. Stats., providing that no contract shall be made by the board of trustees of a town, and no expense shall be incurred by any of the officers or departments of the municipal corporation unless an appropriation shall have been previously made, refers only to the making of such contracts or the incurring of such expenses as may be necessary in carrying out the powers expressly granted to the corporation by the statute, where contracts are required to protect the interest of the town, and does not apply to the exercise of all those implied powers necessary to carry out the powers expressly granted and which require prompt and immediate action, and which could not have been foreseen at the time of passing the annual appropriation ordinance. Said statute does not apply to the

contract or expense incurred in employing special counsel to repre-
sent the town in an action in which it is a party, but such employ-
ment may be made without a previous appropriation having been
made therefor.

*Appeal from the District Court of Arapahoe County.*

Mr. GEORGE C. NORRIS, Mr. EMERSON J. SHORT, Mr. J.
M. ELLIS and Mr. GUY LeR. STEVICK, for appellant.

Mr. GEO. Q. RICHMOND, for appellee.

WILSON, J.

Plaintiff sues to recover from the defendant city the value
of legal services rendered by him under an alleged appoint-
ment by the town of Colfax as special counsel in litigation
arising from proceedings for the annexation of said town to
the city of Denver. No question is raised as to the rendi-
tion of the services, nor their value. Neither is there any
question as to the city of Denver being the proper party de-
fendant, the annexation having been complete. Counsel for
defendant very properly suggest in their briefs that the as-
signments of error are embraced in, and may be discussed,
under three heads.

1. There was no prior appropriation covering the expense.

2. There was no valid contract of employment of the
plaintiff.

3. The town council did not have authority to employ
the plaintiff.

We shall consider these questions in the inverse order of
their presentation.

1. Towns and cities from a very remote period of time
have been invested to some extent with local jurisdiction.
In Rome, municipal corporations existed and were recognized
and provided for by Roman law. Then, as now, they were
created in furtherance of the principle of local self-govern-
ment. Their objects then, as now, were to invest them with

such powers, and impose upon them such duties as might be necessary and proper to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of their inhabitants. These are expressly declared by the statute of this state to be the primary objects and duties of such corporations. Gen. Stats. sec. 3313; Mills' Ann. Stats. sec. 4431.

As a broad general rule, such corporations are entitled to exercise only the powers with which they are specifically invested by the legislative authority which creates them. It being impossible, however, for the legislature to foresee and provide for every contingency which might arise in the government of a town or city, it has long since been settled, and is now the universal rule supported by an unbroken line of authority both in England and America, that such corporations can also exercise those powers necessarily or fairly implied in or incident to the powers expressly granted, and those essential to the declared objects and purposes of the corporation so as to enable it to discharge the duties expressly imposed upon it, and exercise the powers granted in express words. One of these powers, necessarily and plainly implied and clearly essential to the proper discharge of its duties, is, in the absence of express legislative restriction, the power to employ special counsel to appear in litigation in which it may be involved, when, in the exercise of a reasonable discretion, the interest of a municipality may require it. This results from the power with which the corporation is invested to make contracts, to own property and to incur liabilities, in the exercise of which the corporation is liable at any time to be involved in litigation in courts where the respective rights of the parties must be ultimately determined. 1 Dillon Mun. Corp. (4th ed.) § 479; *Rice v. Gwinn*, 49 Pac. Rep. (Ida.) 412; *Smith v. Mayor*, 13 Cal. 532; *Memphis v. Adams et al.*, 9 Heisk. 526; Tiedeman, Mun. Corps. § 176.

As aptly said in *Smith v. Mayor, supra :*

" The duty of protecting the public property carries along with it the duty to employ the usual means of protecting it.

VOL. XV—33

Legal assistance stands as a means for the protection of property in direct relation to the general power to hold, acquire, preserve and protect it." And this is true even where the corporation has its regularly elected or appointed attorney. *Smith v. Mayor, supra ;* Tiedeman, *supra.*

In this state, there is no restriction upon such appointment by statute. The latter simply provides that a board of trustees of an incorporated town shall appoint a town attorney, and shall prescribe the duties of his office. The city relies, however, in this case, upon a resolution of the board of trustees of the town of Colfax, which attempted to specify the duties to be performed by the town attorney, and, among other things, required that he should "represent the town in all legal proceedings before any and all courts of the state in which it may become involved." This did not, either in terms or by implication, exclude the employment of other counsel. If the contention of defendant be correct, a most anomalous condition of affairs would exist. Litigation of great importance to the municipality might arise, involving large interests, and, even though it might be deemed patent that the town attorney should, and ought to, have assistance, the municipality would be powerless to act. Again, the town attorney might fail or refuse to appear for, or represent the town, and yet it could do nothing to have the important interests of its people looked after and represented in the courts by the only person whom it could have—a licensed attorney at law. Surely, it was never the intention of the legislature to permit such a condition of affairs to be brought about. Indeed, in this case, it was alleged in the pleadings, and not denied, that the town attorney appeared in the courts in behalf of the protestants against annexation, which had been approved by a majority vote of the people of the town and by the board of trustees. Should the board of trustees have quietly acquiesced and seen their own wishes, and the wishes of the people for whom they were trustees, thwarted? The question suggests its own answer in reason, common sense and in law. If such were the case, the employé would

be more powerful than the employer; there would be no need of a board of trustees in much of the important business of the corporation, the town attorney being invested with the sole power and authority to bind the corporation, and its people, in all litigated matters. Besides, the town attorney of an incorporated town holds his position solely at the will and pleasure of the board of trustees. He may be, at any time, by either ordinance, resolution or any form of corporate action showing clearly the intent of the corporate authorities, divested of any, or all, power and relieved from the discharge of any or all duties theretofore imposed upon him. We think it beyond dispute that the corporate authorities of the town have, in proper cases, the implied power to employ special counsel in its litigation, being responsible only for a reasonable exercise of that power.

2. The next contention of defendant is, that "there was no valid contract of employment of the plaintiff." This grows out of the following state of fact. The corporate authority of the town was invested in a board, consisting of one mayor and six trustees. Laws, 1889, p. 454; Mills' Ann. Stats. sec. 4508.

The statute provides that, on the passage or adoption of every by-law or ordinance and every resolution or order to enter into contract by a board of trustees, the yeas and nays shall be called and recorded, and that there shall be necessary to its passage or adoption the concurrence of a majority of the whole number of members elected to the council. Waiving the question, which we do not decide, as to whether the employment of plaintiff in this case was such an entering into contract as was contemplated by the statute and intended by the legislature, we will consider it as if such was the case. The first action taken in the premises was at a meeting of the board of trustees, regularly convened, when a resolution was introduced, which, after reciting that at a special election held in the town, a majority of the legal votes cast were for annexation, and that the board of trustees had heretofore recommended to the county court that the report of

such election, signed by the mayor and clerk, under the seal of the town, should be approved, it was resolved :

" That D. C. Webber, Esq., an attorney at law, is hereby authorized and directed to appear as sole and special counsel for this town in said proceeding, and on behalf of this town to consent to the approval of said report. And be it further resolved that George N. Hurd be, and hereby is, relieved as attorney for the town of Colfax for the purposes herein set forth."

The vote was taken by yeas and nays, there being three affirmative votes and two negative. If, therefore, this appointment was the entering into such a contract as contemplated by the statute which we have cited, then the resolution having failed to receive four affirmative votes clearly failed of adoption. It is well settled, however, that a municipal corporation may ratify the unauthorized acts and contracts of its agents or officers which are within the scope of its corporate powers, and not *ultra vires ;* and such ratification as in the case of natural persons is equivalent to previous authority. *Durango v. Pennington*, 8 Colo. 257 ; *Bruce v. Dickey*, 116 Ill. 534 ; Dillon, Mun. Corp. (4th ed.) § 463. At the same meeting at which the resolution above referred to was adopted by the vote stated, and immediately subsequent thereto, it was moved and seconded, as appears from the town records, that " the clerk be instructed to prepare a copy of the said resolution, and certify to the same, said copy to be sent to attorney D. C. Webber." This motion carried by a vote of four yeas and one nay, and immediately subsequent to this, as the recorded minutes recite, " Attorney D. C. Webber, heretofore employed as special counsel to represent the town in the matter of the annexation of the town to the city of Denver, was present and called the attention of the board " to various matters concerning the litigation, and made various suggestions as to what was necessary to be done. Immediately thereafter, it again appears from the town record that by a vote of four yeas and two nays, a warrant was ordered drawn in favor of D. C. Webber for the sum of $100,

"to apply on the costs and fees in the suit in which he had been employed." All these matters occurring, as they did, at the same meeting of the board were part and parcel of the same transaction, and are manifestly sufficient to constitute a ratification under the most rigid rules applying thereto, even if an express contract was necessary for the employment of plaintiff, which we do not decide, and, even if the first mentioned resolution was intended to be such a contract. The trustees having authority to employ special counsel, and neither statute nor ordinance prescribing any particular method or form of procedure which they should resort to or follow in making such employment, or in entering into such contract, if express contract were necessary, their action might be taken, and be absolutely effective, by a vote upon a motion, or the adoption of a resolution, or by any other corporate action which might clearly manifest the intent, and which would be a matter of record. *Board of Education v. De Kay*, 148 U. S. 591; *Green Bay v. Brauns et al.*, 50 Wis. 204; *Trust and Savings Bank v. Arkansas City*, 76 Fed. Rep. 271.

We think, therefore, that ratification was complete and perfect, even if an express contract were required, and comes within the strict rule laid down by our supreme court in *Durango v. Pennington, supra*, to the effect that to constitute the ratification of an invalid contract, where an express contract is necessary and where the contract is required to be made in a specified manner, requires the observance of the same formalities and provisions necessary to be complied with in the making of a valid contract. In this case, the only formality required, if at all, was that the matters relied upon to constitute ratification should have received four votes, being a majority of all the members elect. This was the case.

3. The remaining objection of defendant is that "there was no prior appropriation covering the expense." This is based upon the provision of the statute to the effect that no contract shall be made by the board of trustees of a town, and no expense shall be incurred by any of the officers or de-

partments of the municipal corporation, whether the object of the expenditure shall have been ordered by the board of trustees, or not, unless an appropriation shall have been previously made for such expense. Gen. Stats. sec. 3328; Mills' Ann. Stats. sec. 4449.

It is the duty of courts in construing a statute to do so in such a manner as to give effect, if possible, to the whole and every part of it—such a reasonable construction as would tend to effectuate the purposes and objects of the statute, and carry out the intent of the legislature in its enactment. Applying this rule, and bearing in mind the multifarious duties, many of which it is impossible to foresee or anticipate, which devolve upon the governing bodies of municipal corporations, it seems evident to us that the statute which we have cited refers only to the making of such contracts or the incurring of such expense as may be necessary in carrying out the powers expressly granted to the corporation by the statute, where contracts are expressly required, or where the nature and character of the work or act proposed is such as to seemingly require that an express contract should be entered into to protect the city's interest. We think it would be unreasonable to say that it applies to the exercise of all those implied powers necessary for the corporation to carry out the powers expressly granted. The trustees of incorporated towns are required, within the last quarter of the fiscal year, to pass an ordinance termed " The Annual Appropriation Bill " for the next fiscal year, specifying the objects and purposes for which the appropriation is made, and it is provided that no further appropriation shall be made during said ensuing fiscal year, unless the proposition therefor is first submitted to and sanctioned by a majority of the legal voters therein. It is a matter of common knowledge that conditions frequently arise in towns and cities which it was impossible to have foreseen a few weeks, much less months, beforehand, and which require immediate and prompt action on the part of the municipal authorities in order to protect the interests of the people. Can it be said that if a violent epidemic

should break out, threatening the lives of the inhabitants, the authorities would be powerless to incur any expense until they had first secured the sanction of a majority of the people? They are employed generally to do all acts, and make all regulations, which may be necessary or expedient for the promotion of health or the suppression of disease. This provision might be entirely defeated if the contention of defendant be correct. Likewise, important property interests of the municipality might be involved and an emergency arise requiring for their protection prompt action and the employment of an attorney. In such case, it would be the imperative duty of the trustees to act at once if the emergency seemed to so require. Authorities being empowered to protect the property of a municipality, we believe that the employment of an attorney would in such case be proper without the formality of a prior appropriation for the expense, which, by the way, it might be impossible to accurately estimate in advance, and without incurring the dangerous delay of waiting until the wishes of a majority of the legal voters could be ascertained. These views are not in conflict with any of the decisions of our supreme court, to which we have been cited by counsel. An examination of *Durango v. Pennington, supra*, will disclose that it sustains the views which we have expressed, so far as at all applicable to this case, and unquestionably sustains the right of plaintiff to recover herein. In that case, the town authorities, without the formality of a yea and nay vote, undertook and did enter into a written contract with a party to grade a certain street, The court held that the action upon this contract could not be maintained because of noncompliance with the statute in its execution, but it called attention to the fact that the statute requiring a yea and nay vote upon a contract, and the concurrence of a majority elected as members of the board, before it could be entered into, specified no cases where contracts were required to be entered into, nor did the general incorporation act require that a street improvement like the one in question should be let out upon contract. It there-

fore held that by reason of this and the fact that the statute authorized the board of trustees to make improvements of the character in question, to appropriate money for corporate purposes and to provide for the needs and expenses of the corporation, there being no express regulation upon the subject, the defendant would be liable, under proper issues, for the reasonable value of the services rendered; in other words, the court held that suit could not be maintained upon the written contract, because it was not entered into in compliance with the requirements of the statute, but that no contract was necessary and the town was liable for the reasonable value of the services rendered in a suit brought upon the proper issue.  This, it seems to us, covers this case exactly.

*Sullivan v. City of Leadville*, 11 Colo. 483, involved an alleged contract for grading and macadamizing streets, which was the attempted exercise of a power expressly granted in terms by the statute.

For the reasons given, we think the objections raised and discussed by the city are untenable, and the judgment will be affirmed.

*Affirmed.*