No. 18,023.

CITY OF FORT COLLINS, ET AL. *v.*
PARK VIEW PIPE LINE, ET AL.
(336 P. [2d] 716)

Decided March 16, 1959.   Rehearing denied April 6, 1959.

120

Mr. ARTHUR E. MARCH, Mr. O. REX WELLS, for plaintiffs in error.

Mr. CHESTER A. BENNETT, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

WE will refer to plaintiffs in error, City of Fort Collins, as the City; the City Council as Council; Park View Pipe Line, a mutual ditch company comprised of Hamilton and fifty others, as the Pipe Line Company; to all other defendants in error who comprise one class as Betz and others.

The Pipe Line Company and Betz and others were plaintiffs in the trial court. They commenced action to enjoin the City from discontinuing their water service; to compel the City to continue to furnish water, and to enjoin the City from requiring them, as a condition to future water service, to sign a new water users agreement. Plaintiffs were users and purchasers of water from the City water system living outside of the City limits. They or their predecessors had obtained city water by filling out and filing with the City an application, which application, when accepted by Council, became their contract. Some of the plaintiffs had been purchasing city water under the contracts for a great

many years. The Pipe Line Company and the City had a formal contract which is not the same as that between the City and Betz and others.

Pursuant to City Ordinance No. 24, 1954, "All contracts for the sale of water from the Fort Collins System of water works to users outside of the city limits of the City of Fort Collins, also the charges made therefor, shall be governed as provided by resolution or resolutions of the City Council hereafter to be adopted. * * * " (Section 26).

On December 10, 1954, acting under the power of the ordinance, City Council adopted a resolution that "all contracts for the sale of water from the Fort Collins System of Water Works to users outside of the city limits of the city of Fort Collins, except those special contracts to large users, and except those contracts entered into pursuant to the aforesaid resolution of May 29, 1953, be and the same are hereby terminated effective February 1, 1955." The resolution further provided that the sale of water to outside users who failed to submit an application in accordance with the new water agreement adopted by resolution of Council May 29, 1953, should be discontinued as of February 1, 1955. Various extensions were granted by Council, but on June 3, 1955, the City Manager, on orders issued by City Council, commenced shutting off service to those formerly receiving water under the former applications who had not complied with Council's directive to sign new water users agreements. The complaint of the plaintiffs was immediately filed, and the City immediately appeared and agreed to the giving and granting of temporary injunction.

The complaint of plaintiffs sets out Fort Collins as a home rule city; that permission had been given plaintiffs or their predecessors to tap the municipal water system for water to be used outside the city limits; that they had expended considerable sums of money to tap the municipal water system; that they had been notified

that their contracts and permits had been cancelled, and that their water service would be discontinued unless they executed new outside water users agreements. They further alleged that the City Council became incensed over an annexation controversy and that the action of the Council in cancelling the plaintiffs' contracts and permits was a vengeful conspiracy and alleged scheme to circumvent the annexation statutes.

The City in its answer alleged that the plaintiffs did not state a claim for relief but admitted all of the allegations of the complaint with the exception of the charges that the Council was motivated by vengeance. The facts at the hearing were undisputed.

The trial court made lengthy findings of fact, and its conclusions of law were: That the City disposed of its surplus water on the basis of permissive use in its proprietary capacity; that the public had no enforceable right to demand water service; that the annexation statutes make it mandatory that a petition for annexation be signed personally by the petitioners and that the "Outside Water Users Agreement" and shutting off outside city consumers for failure to sign same are contrary to public policy, illegal and void. The court by decree made the temporary injunction permanent to the limited extent only that the defendants were enjoined from the use of the "Outside Water Users Agreement" and enjoined the city from discontinuing water service for failure to execute the same. In all other respects the temporary injunction was dissolved and the court entered findings in favor of the City and against the plaintiffs.

There are many assignments of error by the City and assignments of cross error by the Pipe Line Company and Betz and others. All of them can be resolved under three broad questions.

Questions to be Determined

First: *Was the court correct in holding that the City sells its water in its proprietary capacity and in contract-*

*ing can impose such conditions and limitations as the parties by their contract may agree upon?*

This question is answered in the affirmative.

█ The determination of this issue is the ruling of this court in *Englewood v. Denver,* 123 Colo. 290, 229 P. (2d) 667, wherein it was held:

"Under the conditions presented by the terms of the ordinance, the water company, and Denver, its successor in interest, is not under public duty to furnish water to Englewood at any kind of rates *or to furnish water at all.*

\* \* \*

" \* \* \* Application of this test to the facts before us reveals that this extraterritorial supply of water is on a non-utility basis, and in so operating, under express statutory authority, it can collect such charges therefor and make such conditions and limitations as it may impose, *all without liability of any vested* right in a continued sale or leasing thereof. \* \* \* " (Emphasis supplied.)

Of similar import is *County of Larimer v. City of Fort Collins,* 68 Colo. 364, 189 Pac. 929.

In the Englewood case, supra, the court cited *City of Phoenix v. Kasun,* 54 Ariz. 470, 97 P. (2d) 210, the pertinent language of which is as follows:

"After a careful consideration of all the authorities, we are of the opinion that the controlling factors in the present case are that the city was under no obligation, as a matter of law, to furnish any service to the plaintiffs; that the *relationship between them was purely contractual in its nature,* and that such being the case, the reasonableness or unreasonableness of the rates fixed by the contract are not subject to review by the court. The *only right which it has under the circumstances is to determine whether the city is complying with the terms of its contract,* \* \* \*." (Emphasis supplied.)

Second: *Under the circumstances and evidence here, including the contracts to be construed, did the city have*

*the right to terminate the water service of the defendants in error?*

This question as to the defendants Betz and others is answered in the negative.

As to the defendant Park View Pipe Line, it is answered in the affirmative.

Taking up the Park View contract first, a provision for cancellation of the agreement and termination of the water service is to be found in the following paragraph:

"Party of the first part reserves the right to cancel this contract at any time upon giving written notice to the party of the second part of its intention so to do, and the party of the second part shall never obtain, claim or assert any perpetual easement in its right to water under this contract, and shall be bound by all rules and regulations adopted by the party of the first part governing the administration, use and rentals of water from said system of water works."

■ It may be seen from this language that the Pipe Line Company agreed that its contract to obtain water could be terminated at any time on written notice and that it would never claim or assert a perpetual right to the water under the contract. Even in the absence of an agreement not to claim or assert any right, the right of revocation on the part of the City was absolute and unequivocal.

■ The contract with Betz and others, however, was a different contract. The City, in giving notice to terminate its water service and in cancelling its contracts with Betz and others, stated that it was doing so because Council had determined that "it was for the best interests of the City of Fort Collins." A careful examination of the contracts of Betz and others shows that the City of Fort Collins did not reserve the right to revoke the water service on a conclusion that "it was for the best interests of the City of Fort Collins." Rather the contract is: "it being understood and agreed that the City of Fort Collins in granting this application reserves

the right to discontinue the service of water to the undersigned, his successors, heirs or assigns [these included Betz and others], at any time, when, in the judgment of the City Council, the *interests of the city of Fort Collins require the discontinuance of such service in order to better serve the inhabitants of the City of Fort Collins.*" Thus it may be seen that Betz and others had a right to rely on the fact that they would continue to receive water as long as it did not interfere with the water service of the users inside the City of Fort Collins. This is a condition in the contract which requires a determination of a fact, namely, that the sale of water to outside users is interfering with better service to the city inhabitants. There was no showing that any such condition existed at the time of the action by Council. In fact, it is admitted in the record that there was a surplus of water at the time of the attempt to discontinue the service.

It is apparent from the resolution of Council and from the brief of the City that the City was under the impression that its contract permitted it to revoke permission to use its water to outside water users upon the determination that it was for the "best interests of the city." Thus such considerations as broadening the tax base by annexing fringe areas might be considered as being for the best interests of the City. Such considerations by Council, however, looking to what would be of interest to the City as a governmental entity, have no place when the sole issue to determine is whether service of water to city water users will be bettered by the discontinuance of the sale of surplus water to outside users. It is a law of contracts applicable here that the grounds for termination of a contract under express provisions therein are controlled by such provisions, which will ordinarily be enforced according to their terms. 17 C.J.S., sections 399 and 400. The provisions of the contract under consideration here are very similar to contracts providing for termination for "just cause" or

"good cause" wherein it is held that it must be a fair and honest cause regulated by good faith on the part of the party exercising the power to terminate. The corollary here is that there must be a showing by the City or by Council, in a meeting called for the purpose of considering these contracts, that a condition exists with reference to service of the inhabitants of the City that requires termination of its sale of water outside of the city limits in order for the City better to discharge its obligation to the City water users. If and when that condition arises, the City may act. Until it does, the outside water users can assume that their contract will be honored. The court was in error then in dissolving the injunction and should have restrained the City from terminating service of water to Betz and others.

Third: *Did the court err in making a determination as to the legality of the new water users agreement?*

This question is answered in the affirmative.

██ None of the parties before the court had executed the new water users agreement. Therefore the contract was not before the court. It requires no citation of authorities to support the proposition that when the parties before the court have exercised their free choice and have refused to enter into a contract, the court cannot interpret such contract or determine rights or status under it. The question is simply moot and remains so until such time as the parties to the contract challenge its validity or the right of enforcement, thus properly bringing it before the court. We have the anomalous situation of parties objecting to a contract and upon the grounds of the objection refusing to sign the same, and then seeking to obtain equitable relief by way of injunction.

The judgment of the court dissolving the injunction as to the Pipe Line Company is affirmed.

The judgment as to Betz and others is reversed and remanded with instructions to reinstate the injunction prohibiting the City from terminating the original con-

tract between the City and the outside water users, Betz and others, and reinstating the original contract of Betz and others with the City to full force and effect.

The judgment affecting the new water users agreement is reversed and the cause remanded with instructions to enter a judgment consistent with the views herein expressed.