## No. 27463

**Perl-Mack Enterprises Co., a Colorado corporation v. The City and County of Denver, a municipal corporation**

(568 P.2d 468)

Decided September 6, 1977. Rehearing denied September 26, 1977.

---

6

Holme Roberts & Owen, Peter H. Holme, Jr., Bruce F. Heitler, for plaintiff-appellee.

Max P. Zall, City Attorney, Brian H. Goral, Assistant, for defendant-appellant.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

Plaintiff-appellee Perl-Mack Enterprises Co. (Perl-Mack) sought a judgment declaring that a "Memorandum of Agreement" entered into with defendant-appellant City and County of Denver (Denver) exempted them from a fee charged by Denver for new sewer connections.

Perl-Mack is the successor-in-interest of Miller Enterprises, Inc. (Miller), which was the original party to the Memorandum of Agreement entered into with Denver on June 30, 1965. Miller had developed the area known as Montbello, and was approached by Denver and several other municipalities each seeking annexation of Montbello to its territory. Ultimately Denver prevailed in the competition and an annexation agreement between Miller and Denver was signed. This dispute arose out of the following provisions of the agreement:

"1.2. Annexor (Miller) recognizes that certain terms and commitments made herein, including the City's responsibility for capital improvements and maintenance thereof, are subject to approval through the normal legislative processes by the Board of Councilmen of the City.

"7.1. The City agrees to arrange for the installation of a sanitary sewer outfall line of sufficient size and capacity to serve the land at no expense to the Annexor, except as hereinafter set forth. . . . The City agrees that it will thereafter, at no expense to Annexor, dispose of all sewage flowing

from the land in sewage pipe. . . . Notwithstanding the foregoing, the City shall not be precluded from assessing the land for a sewage treatment fee providing such sewage treatment fee is made on all real estate within the City limits of the City and County of Denver."

As partial consideration, the contract provided that the Montbello developers were to construct and pay for the sewage collection system which would serve Montbello, then convey that system to Denver at no cost.

Pursuant to the 1965 agreement, Denver annexed Montbello and Perl-Mack's predecessor transferred a completed sewer system to Denver. Then, in 1973, the Denver Board of Councilmen enacted Ordinance 583, establishing a "Facilities Development Fee" for the City and County of Denver. This fee is a one-time charge imposed on each new connection to the Denver sewer system.

Denver's Manager of Public Works decided that Paragraph 7.1 of the agreement, *supra*, did not exempt new sewer connections in Montbello from the Facilities Development Fee. In order to get Denver building permits, Perl-Mack has been required to pay, and has paid under protest, over $72,000 in such fees. Perl-Mack brought this action to determine whether the "Facilities Development Fee" is made inapplicable by the above-quoted portions of the contract.

The trial court held that the terms of the agreement and the constitutional prohibition against impairment of contracts require that Montbello be exempted from the "Facilities Development Fee" ordinance. We affirm on the ground that the contract terms exclude Perl-Mack from the ordinance's operation, and therefore we do not reach the constitutional issue.

I.

Denver has suggested that certain formalities required to give validity to a contract entered into by Denver were not met when the Memorandum of Agreement was executed. First, Denver argues that Perl-Mack's predecessor did not obtain the signatures of certain city officials whose signatures were necessary to bind the city. Secondly, Denver argues that the approval of the Denver Board of Councilmen, allegedly required by the terms of the contract, was never obtained. We cannot accept these contentions.

As to the first point, the record clearly indicates that during negotiations Perl-Mack's predecessor expressed concern that the signatures necessary to bind the city be obtained, and was assured by Denver's representatives that this would be arranged properly. It is uncontested that Denver personnel drafted the contract, and that they provided in the draft specifically labelled spaces in which Denver's representatives were to sign. Those signatories included the Mayor, the Manager of Public Works, the Manager of Parks and Recreation, the Manager of Revenue, and the Director of Planning. Furthermore, at least one subsequent agreement between these parties expressly referred to and ratified this contract, and it was

signed by those Denver officials whose missing signatures are here claimed to be indispensable.[1] In light of these facts the city will not now be heard to complain of these missing signatures. *See City of Colorado Springs v. Colorado City,* 42 Colo. 75, 94 P. 316 (1908); *City of Denver v. Webber,* 15 Colo. App. 511, 63 P. 804 (1900).

■■■ As to the second point, Denver contends that Paragraph 1.2 of the agreement set out above rendered the terms of the contract subject to the approval of the Denver Board of Councilmen, and absent express approval the terms remained conditional until the subsequent ordinance implicitly *disapproved* them. Ambiguities in a contract must be construed against the party who drafted the contract, and the broad, general language of the cited paragraph cannot be read to withhold indefinitely the city's final commitment. In addition, the Denver Board of Councilmen specifically referred to this agreement in later actions, thereby ratifying its terms. *See City of Denver v. Webber, supra.* Finally, except for the present controversy both Perl-Mack and Denver have been performing fully their obligations under the contract. Moreover Denver has accepted valuable benefits from the contract, including substantial additions to Denver's tax base. Denver is estopped from relying upon these irregularities as to form at this point. *City of Colorado Springs v. Colorado City, supra, See also Colorado Finance Co. v. Bennett Oil Co.,* 110 Colo. 1, 129 P.2d 299 (1942).

## II.

■ Denver next asserts that by its terms (Paragraph 7.1, *supra*) the contract does not exempt Perl-Mack from paying the "Facilities Development Fee." We disagree.

The agreement reserves to the city only the power of "assessing the land" in Montbello for "sewage treatment fees" if such fees are also charged "on all real estate" within Denver. These terms cannot be construed to allow collection of the facilities development fee in Montbello. This fee is a one-time charge for a new connection to the Denver sewer system; it is not an on-going charge to pay for the treatment of sewage. Nor is the fee assessed against the "land" or "all real estate" in Denver; rather, it is assessed only upon new *connections* to the sewer system. In essence the fee is a "tap fee," not a "treatment fee," and the mode of its assessment does not comport with the types of fees reserved to the city by the contract.

A further indication that the disputed fee is not a "sewage treatment fee," as that term was used in the contract, is the fact that a periodic charge has been and still is assessed against all real estate in Denver,

---

[1] A formal agreement between these parties and the Denver Water Board dated September 7, 1965, superseded the instant agreement's provisions dealing with water service, but stated: "In all other respects said Agreement dated June 30, 1965, shall remain in full force and effect."

including Montbello, to cover the expense of treating sewage waste. This fee *does* fit within the terms of the agreement, and has been paid without objection by Perl-Mack.

In short, Perl-Mack, having paid the entire cost of a sewer system, conveyed it to the city on the condition that Montbello not be assessed further for "facilities," since the development had supplied its own. Perl-Mack agreed to pay the expense of treating its sewage, but "treatment" cannot be construed to include a fee designated for "facilities development." To require payment of that fee would be to allow Denver to circumvent the clearly expressed intention of its earlier agreements.

### III.

Finally, Denver argues that if the agreement is construed so as to limit future actions by the City, it must necessarily be void, either as an impermissible limitation on the Board of Councilmen's legislative or police powers, as "special" or "class" legislation, or as an impermissible pledge of the city's credit. These arguments are unpersuasive.

Contracts providing for sanitation services and the fees to be charged for those services are within the proper scope of the proprietary powers of a municipal corporation. The fact that such a contract binds the city for a period in the future does not make it objectionable as a surrender of legislative or police powers, since those powers are not involved. *National Food Stores, Inc. v. North Washington Street Water and Sanitation District*, 163 Colo. 178, 429 P.2d 283 (1967); *Cerise v. Fruitvale Water and Sanitation District*, 153 Colo. 31, 382 P.2d 462 (1963); *City and County of Denver v. Hubbard*, 17 Colo. App. 346, 68 P. 993 (1903). The relationship between Perl-Mack and Denver is purely contractual, and the conditions and limitations imposed by the parties are valid. *National Food Stores, Inc. v. North Washington Street Water and Sanitation District, supra; Fort Collins v. Park View Pipe Line*, 139 Colo. 119, 336 P.2d 716 (1959); *Englewood v. Denver*, 123 Colo. 290, 229 P.2d 667 (1951).

Denver's argument that the agreement constitutes impermissible "class legislation" or a grant of "special privileges and immunities" also fails. *Colo. Const.* Art II, Sec. 11 prohibits the enactment of any *"law . . . making any irrevocable grant of special privileges, franchises or immunities. . . ."* (Emphasis added.) As we have noted, the agreement here is simply a business contract, executed through the city's proprietary power. It is not a law. Thus it cannot be viewed as coming within the prohibitions of Art. II, Sec. 11.

Nor can the agreement be referred to in any meaningful sense as a pledge of the city's credit in aid of a private corporation, in contravention of *Colo. Const.* Art. XI, Sec. 2. The city, in exchange for Montbello's completed sewer system, promised not to charge Montbello for the services in issue. Construction of the system was paid for by Perl-Mack alone. No

bonds were issued by the city, nor were any payments to be made by the city. No pledge of Denver's credit in Perl-Mack's favor is in any way suggested by the record. *Cf., e.g., Lord v. City and County of Denver*, 58 Colo. 1, 143 P.2d 284 (1914).

In short, Denver has entered into a valid business contract whose terms prohibit it from assessing against Perl-Mack the disputed sewer connection fee, and no legal impediments stand in the way of Perl-Mack's enforcing that contract.

Judgment affirmed.

MR. JUSTICE KELLEY does not participate.