MR. JUSTICE LEE
delivered the opinion of the Court.
The Plaintiff, Adams County Community Center for Retarded and Seriously Handicapped, Inc., was awarded a judgment for $16,041 in a breach of contract action against the defendants (the State of Colorado, the Department of Institutions, the Division for Developmental Disabilities, and the Department of Social Services), who appeal. We affirm.
*450 The General Assembly, in section 27-11-101 et seq., C.R.S. 1973, established^ a program to purchase services for mentally retarded and seriously handicapped persons through community incorporated boards as an alternative to custodial care in state institutions. The Department of Institutions was authorized to purchase such services.
On July 1, 1974, the plaintiff contracted with the defendants to provide services to mentally retarded and seriously handicapped persons for a sum of $113,873, which had been specifically appropriated by the legislature. The contract contained a modification clause which read: “This amount, or any amendment made thereto, may be increased or decreased during the term of this Agreement by the State after appropriate notice and consultation with the contractor.” The contract was officially approved by the authorized representatives of the Executive Director of the Department of Institutions, the State Controller and the State Attorney General.
In March of 1975, the General Assembly passed a supplemental appropriation to be distributed to the various community centered boards which had contracted with the state to provide services to mentally retarded and seriously handicapped persons. Subsequent thereto, the Division for Developmental Disabilities (hereinafter “Division”) requested and received assistance from members of the Association of Community Centered Boards in determining the proper allocation of the supplement.
On June 2, 1975, David Blume, the director of the Community Services, a section of the Division, issued a memorandum to all coordinators of the community centered boards, entitled “Final Calculation on 74-75 Appropriation.” This memorandum, a copy of which was sent to the director of the Division, acknowledged the assistance of the coordinators of the various community centered boards (contractors) in arriving at the final calculations. Attached to this memorandum was a payment schedule which showed that the plaintiff was to receive $2,655 per client. This payment schedule was reaffirmed by Blume in a letter to the coordinator of plaintiff, dated June 30, 1975, a copy of which was sent to the director of the Division. After the state refused to honor the contract modification, the plaintiff commenced this action. Trial was to the court, which rendered judgment for the plaintiff and awarded damages of $16,041.
The defendants appeal, asserting that: (1) the modification clause is void because it allows for increases above and beyond authorized appropriation in contravention of section 24-30-202(3), C.R.S. 1973; (2) the modification clause and the alleged modification represented by the June 2 memorandum and June 30 letter are invalid because they are statutorily defective; (3) there is insufficient evidence in the record to support the district court’s conclusion that there was “notice and consultation with the contractor” as required by the modification clause; and (4) the district court erred in its calculation of damages. We find the foregoing *451 contentions lack merit, and, therefore, affirm the judgment in favor of the plaintiff.
I.
Pertinent to the defendants’ contention that the modification clause is void is section 24-30-202(3), C.R.S. 1973, which provides in part: “In no event shall the head of any department, institution, or other agency or the controller, either by himself or through any assistant designated by him, approve any commitment voucher involving expenditure of any sum in excess of the unencumbered balance of the allotment to which the resulting disbursement would be charged. No person shall incur or order or vote for the incurrence of any obligation against the state in excess of or for any expenditure not authorized by appropriation, allotment, and approved commitment voucher except as expressly authorized by this section. Any such obligation so raised in contravention of this section shall not be binding against the state but shall be null and void ab initio and incapable of ratification by any administrative authority of the state to give effect thereto against the state. . . .” (Emphasis added.)
Pointing to the statute, the defendants assert that the modification clause is “null and void ab initio” because it allows for incurrence of a state obligation in excess of the $113,873 appropriation. The contract modification did not take place until after the passage of the supplemental appropriation. An obligation, therefore, was not incurred “in excess of the unencumbered balance of the allotment to which the resulting disbursement would be charged.” Thus, because the clause did not contravene the statute it is not void.
II.
Defendants argue that any state expenditures which may arise from the modification clause as a result of Blume’s June 2 memorandum and payment schedule are invalid because there was no commitment voucher on file as required by section 24-30-202(1), C.R.S. 1973, and the executive director of the Department of Institutions and the state controller did not approve the June 2 payment schedule as required by section 24-30-202(2), C.R.S. 1973.
The defendants first contend that the June 2 memorandum and June 30 letter are not commitment vouchers, and, therefore, no disbursements should have been made as directed by section 24-30-202(1), C.R.S. 1973.[1] The district court found that the July 1, 1974, contract was self-executing *452 and therefore served as a commitment voucher under the statute for the supplemental appropriation. We agree with the district court’s resolution of this contention.
The defendants’ next contention is similarly flawed. They argue that no authorized designee of the state controller approved a commitment voucher, as required by section 24-30-202(2), C.R.S. 1973,[2] in relation to the supplemental appropriation. They assert that because Blume was not authorized to approve commitment vouchers the June 2 payment schedule and his June 30 reaffirmation letter were not binding on the state. The defendants assert that individuals contract with state officials at their peril, depending upon whether the official is acting within the scope of his authority. Mulnix v. The Mutual Benefit Life Insurance Company, 23 Colo. 71, 46 P. 123 (1896).
As mentioned above, the July 1, 1974, contract containing the modification clause from which sprang the June 2 payment schedule was duly approved, on file, and constituted a sufficient “commitment voucher” under the statute. Moreover, the director of the Division, who was authorized to approve commitment vouchers, was fully aware of the memorandum and the letter relating to the June 2 payment schedule.
In our view, it is totally unacceptable for the defendants to rely upon irregularities as to form to defeat this contract action when they have received the valuable services of the plaintiff. A state department cannot receive the benefits of a contract and then refuse to pay for the benefits, based on minor divergencies from statutory prerequisites. Highway Dept. v. Dawson, 126 Colo. 490, 253 P.2d 593 (1953). Thus, under the circumstances of this case, the defendants are estopped from asserting that they are not bound by the modification clause and the resulting payment schedule. Perl-Mack Enterprises Co. v. City and County of Denver, 194 Colo. 4, 568 P.2d 468 (1977); Highway Dept. v. Dawson, supra; City of Colorado Springs v. Colorado City, 42 Colo. 75, 94 P. 316 (1908).
III.
Defendants contend that there is insufficient evidence in the record to support the district court’s conclusion that “notice and consultation” with the contractor occurred as required by the modification clause. Our review of the record, however, reveals adequate support for the district court’s conclusion. In his June 2 memorandum, addressed to the Coordinators of the Community Centered Boards, Blume specifically acknowledged that he had “met with the Finance Committee [of the *453 Community Centered Boards] to discuss the distribution of the appropriation. The technical assistance the Committee provided was deeply appreciated and extremely helpful.” The coordinator of the plaintiff, Robert Gris-wold, testified to the extensive consultation and meetings with the Division. Both the June 2 memorandum and June 30 letter provided the required notice of the final calculation on the distribution of the supplemental appropriation. On this record we will not disturb on review as manifestly erroneous the district court’s conclusion. Deas v. Cronin, 190 Colo. 177, 544 P.2d 991 (1976).
IV.
Finally, the defendants contend that the district court erred in its ascertainment of damages (1) by using the wrong formula and (2) by not subtracting from the state’s obligation “any federal or cash funds received for general operating expenses from any other state or federal source” as required by section 27-11-103(1 )(a), C.R.S. 1973 (1978 Supp.).
Crucial to this contention is section 27-11-103(1) (a) which provides in pertinent part:
“Each year the general assembly shall appropriate funds to purchase services for the mentally retarded and seriously handicapped from community center boards, corporations not for profit, or accredited nonprofit workshops which have been approved by the department of institutions, on the basis of five percent local funding to be matched by ninety-five percent state funding less any federal or cash funds received for general operating expenses from any other state or federal source and less the required local school district funds as provided under subsection (3) of this section. . . .”
Our reading of the statute reveals that the district court’s formula was eminently correct and statutorily sound. The court, in effect, calculated the total approved program cost for the plaintiff by multiplying the number of clients by the annual-cost-per-client established in the June 2 memorandum. The court then subtracted from that total the 5% responsibility of the plaintiff, the school district contributions, and the federal contribution to arrive at the total obligation of the state to the plaintiff. From the total obligation, the court subtracted payments already received by the plaintiff from the state, the remainder representing the amount owed the plaintiff for services rendered to 271 clients. The various formulae advanced by the defendants, in our opinion, do not adhere as closely to the statutory demands as do the court’s calculations.
Moreover, the defendants’ dispute with the court’s annual-cost-per-client figure misconceives a trial court’s responsibility and sole prerogative of making a reasonable determination of damages from conflicting evidence. Peterson v. Colorado Potato Flake & Mfg. Co., 164 Colo. 304, 435 P.2d 237 (1967). After a thorough review of the record, we cannot say that the district court committed manifest error in utilizing that particular *454 cost figure.
Defendants further contend that the literal interpretation of the statute requires that any nonrestricted funds received by the plaintiff for general operating expenses from any other state or federal sources must be deducted from the state’s total obligation. Relying on an independent audit, the defendants assert that a total sum of $217,666, which they claim represents nonrestricted funds received from other state or federal sources, should therefore have been deducted.
We have reviewed the independent audit, as well as the testimony of the expert accountant called by the defendants, and find no support for characterizing the source of the $217,666 as either state or federal. Rather, the sources were “local community,” “in-kind contributions” and “other,” none of which, as far as the record discloses, are attached to either state or federal funding pools.
Furthermore, as revealed by the record, the practice and policy of the Division was consistently that any money collected, regardless of the source, over and above the 5% local match of the approved program cost, could be retained by Community Centered Boards. In no instance has it been demonstrated that the state ever demanded from any Board more than 5% of the approved program cost as local match, nor has the state ever demanded from any Board any money raised over and above the approved program cost.
We therefore find that there was sufficient evidence to support the district court’s ascertainment of damages.
The judgment is affirmed.
MR. JUSTICE CARRIGAN does not participate.

 Section 24-30-202(1), C.R.S. 1973, reads in pertinent part:
“No disbursements shall be made in payment of any liability incurred on behalf of the state, other than from petty cash, unless there has been previously filed with the division of accounts and control a commitment voucher. The commitment voucher may be in the form of an advice of employment, a purchase order, a copy of a contract, or a travel authorization or in other form appropriate to the type of transaction as prescribed by the controller. . . .” (Emphasis added.)

 Section 24-30-202(2), C.R.S. ¡973, reads in pertinent part:
“The controller, or such assistant as he may designate, shall examine each commitment voucher .... The controller or his designated assistant shall record his approval or disapproval on the face of each voucher. ...”