**COTTONWOOD HILL, INC., a Colorado corporation, Plaintiff-Appellee and Cross-Appellant,**

v.

**Ronald J. ANSAY and Clara E. Ansay, Defendants and Third-Party Plaintiffs-Appellants and Cross-Appellees.**

No. 84CA0828.

Colorado Court of Appeals, Div. I.

June 27, 1985.

Rehearing Denied July 25, 1985.

Certiorari Denied Nov. 12, 1985.

Holland & Hart, John S. Castellano, Peter C. Houtsma, G. Daniel Whittaker, Denver, for plaintiff-appellee and cross-appellant.

Calkins, Kramer, Grimshaw & Harring, Richard L. Shearer, Randall M. Livingston, Denver, for defendants and third-party plaintiffs-appellants and cross-appellees.

PIERCE, Judge.

This action arises from an option exercised by plaintiff-lessee Cottonwood Hill, Inc. (Cottonwood) for purchase of certain property from defendants-lessors, Ronald J. and Clara E. Ansay (Ansay). Both parties appeal. We affirm.

Pursuant to its lease agreement with Ansay, Cottonwood exercised its option to purchase by notifying Ansay in September 1983. The purchase option clause also provided that the purchase price was to be determined by appraisal of the property and that Cottonwood could purchase at such appraised price provided that that price was not less than $575,000. The property in question consists of 8 acres of land and the improvements thereon. The structure on it has been specially modified from a residential dwelling into an alcohol and drug rehabilitation center. The uniqueness of this property gave rise to very divergent appraisals submitted by the parties, leading to this lawsuit.

The appraisal selected by the trial court valued the property at $538,000 without benefit of the lease and $618,000 with additional value from the lease. Rejecting the additional lease value, the trial court established the purchase price to be $575,000 which was the minimum price set by the purchase option agreement. The trial court also found that the special use permit which allowed the use of the property as a rehabilitation center did not add value to the land, and therefore, it found that any business income or rentals paid on the property were not appropriate factors to consider in valuing the property. In addition, the trial court ordered Cottonwood to pay Ansay the $10,000 monthly rental payments from September 1983 until the pur-

chase amount was deposited into the court registry on July 26, 1984.

## I.

### A.

Ansay first claims that the trial court erred by rejecting the appraisal based on the "capitalization of income" method of evaluation. We disagree.

*Denver Urban Renewal Authority v. Berglund-Cherne·Co.,* 193 Colo. 562, 568 P.2d 478 (1977), upon which Ansay relies, states that the capitalization of income method is *an* appropriate valuation technique. The court in *Berglund* stated that:

> "Opinion evidence as to value requires that the unique and different characteristics of every individual piece of property be analyzed for its comparability to other property that bears comparable characteristics. Factual circumstances may cause one approach to valuation to be more appropriate than another.... No purpose is served by limiting testimony to one approach or to the most appropriate method in obtaining an opinion as to value."

The court in *Berglund* went on to say that it is the trier of fact who has the duty "to weigh the opinion and judge the credibility of an expert witness on value to determine which of the three approaches is most indicative of the actual market value of the property...." Here, after listening to six different appraisers presenting different valuation techniques and appraisals, the trial court, in accordance with *Berglund, supra,* weighed the opinion and credibility of each and chose one as being the most appropriate to the characteristics of this individual and unique property.

The credibility of the witnesses, plus the sufficiency, probative effect, and weight of all the evidence including the documentary evidence, and the inferences and conclusions to be drawn therefrom, are all within the province of the trial court, and its treatment thereof will not be disturbed on review unless clearly erroneous. *Adler v. Adler,* 167 Colo. 145, 445 P.2d 906

(1968); *Travelers Insurance Co. v. Gasper,* 630 P.2d 97 (Colo.App.1981).

Here, the trial court's conclusions as to which appraisal to accept are supported by the evidence. That appraisal considered the value of the land, the value of the building, and the values of the improvements. It also considered the agricultural zoning, the specific use of the property, the alternate uses possible for the property, and the value resulting from the existing lease. Therefore, we uphold the trial court's choice of an appropriate appraisal.

### B.

Ansay further argues that the trial court's acceptance of this appraisal is contrary to the stipulation of the parties, that the highest and best use of the property is as a drug and alcohol rehabilitation center. We disagree.

The stipulation stated as follows:

> "The highest and best use of the property is its present use as an alcohol and rehabilitation, drug rehabilitation center. Both parties agree that the facility is presently located in an A–2 zone with a user permit."

By its own terms, this stipulation does not restrict what or how appraisals and valuations would be conducted and applied. It does not preclude evidence of different appraisals nor evidence of various valuation methods. *See Board of County Commissioners v. Highland Mobile Home Park, Inc.,* 543 P.2d 103 (Colo.App.1975) (not selected for official publication).

Furthermore, although the accepted appraisal is not written in a very clear fashion, it does state that it considers "the highest and best use for the subject [as being] the existing use under the special use permit." In his testimony, the appraiser opined that there were two highest and best uses:

> "One is improved with a special use permit, and [the other is] if that permit is cancelled and vacant, it is a low density residential development."

Thus, the court's reliance on this testimony and appraisal is within the parties' stipulation.

## II.

### A.

Cottonwood's primary contention on cross-appeal is that its relationship with Ansay changed from lessor-lessee to vendor-vendee upon its exercise of the option to purchase. As a result of the change in relationship, Cottonwood claims that any rental payments made after September 1983 should be applied to the purchase price rather than be considered as rental payments. We agree that that principle is applicable under most circumstances, but under the unique facts before us we choose to allow equity to work in favor of Ansay.

The general rule is that, absent a saving provision, the tenant is relieved of his obligation to pay rent upon exercise of an option to purchase. *Ruark v. Peterson*, 30 Colo.App. 162, 491 P.2d 75 (1971); *see* 2 *Friedman on Leases* § 15.5; *cf. Kimmick v. Santilli*, 42 Colo.App. 341, 596 P.2d 1223 (1979) (where the lease expressly provided for rent abatement only as of the date of delivery of the deed.) Here, the lease agreement contained no provision for rent payment subsequent to exercise of the option to purchase nor for rent abatement upon delivery of the deed.

Under normal circumstances, it is up to the parties to protect themselves in the event of delays in a closing or in performance of other contractual obligations. However, here, neither party could have anticipated the large discrepancy in appraisal values and the resultant delay caused by the judicial resolution of the valuation issue. Thus, equity dictates some relief to Ansay who has derived no benefit from and during the long delay, while Cottonwood has in practical terms remained as the lessee—both in possession and use of the property. *See London v. Joslovitz*, 279 App.Div. 280, 110 N.Y.S.2d 58 (1952); *see also Kimmick, supra.*

Had the option to purchase been exercised as contemplated under the lease agreement, Cottonwood would have tendered payment within 45 days of exercise of the option when Ansay delivered good and sufficient general warranty deed to Cottonwood. Thus, following the generally accepted rule as stated in *Ruark, supra,* we conclude rents are not due Ansay for those 45 days which constitute a normal anticipated delay and which presumably is incorporated in the minimum purchase price. Thereafter, equity dictates that rents be paid by Cottonwood through the time of tender of the purchase price.

### B.

Cottonwood finally argues that it is entitled to attorney's fees pursuant to the provision of the lease agreement which states that:

"In the event either party shall, without fault on its part, be made a party to litigation ... against the other arising by reason of failure to perform that party's obligations under the agreement, the other shall indemnify [as to] ... all costs and attorney's fees incident to such litigation...."

The trial court here found, and the record substantiates, that neither party failed to perform its obligations under the agreement. Any ambiguities in the lease agreement which gave rise to the dispute as to the value of the property and as to the appropriate appraisal which was to govern the purchase price must be construed against the party who drafted the contract. *Perl-Mack Enterprises Co. v. Denver*, 194 Colo. 4, 568 P.2d 468 (1977). The trial court, therefore, properly denied attorney's fees to Cottonwood.

The judgment is affirmed.

SMITH and BABCOCK, JJ., concur.