**Markis STONE**

v.

**Edward MAHER, as Commissioner of Social Services of the State of Connecticut; Edmund J. Mickiewicz, as Acting Commissioner of Administrative Services of the State of Connecticut.**

**Civ. A. No. H–77–269.**

United States District Court, D. Connecticut.

March 24, 1980.

Martha Stone, Connecticut Civil Liberties Union Foundation, Hartford, Conn., Laurence Levine, Hartford, Conn., for plaintiff.

Jacob Goldman, Paul Shapiro, Paul J. Bakulski, Asst. Attys. Gen., Carl R. Ajello, Atty. Gen., Hartford, Conn., for defendants.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

CLARIE, Chief Judge.

This action is before the Court on the parties' cross motions for summary judg-

ment.[1] The plaintiff has brought this class action[2] under the Civil Rights Act of 1871, 42 U.S.C. § 1983 seeking monetary, declaratory, and injunctive relief. Plaintiff claims that §§ 46b–172 and 53–304 of the Connecticut General Statutes violate constitutional due process by providing in effect that a putative father may not litigate or contest the issue of his paternity in a judicial proceeding, if he has previously executed a written acknowledgment of paternity. As to certain portions of Conn.Gen.Stat. § 46b–172, the Court finds merit in the plaintiff's claim and accordingly grants his motion for summary judgment to that extent only.

### Jurisdiction

Section 1343(3) of 28 U.S.C. provides a basis for this Court's jurisdiction over the subject matter of the present action.

### Facts

The defendant Edward Maher is Commissioner of the Connecticut Department of Income Maintenance. Pursuant to § 17–2 of the Connecticut General Statutes, he is responsible for administering aid to dependent children and for those children who require the care, protection, or discipline of the State of Connecticut. The defendant Edmund J. Mickiewicz is the Acting Commissioner of Administrative Services of Connecticut. Pursuant to § 4–68a of the Connecticut General Statutes, he is responsible for enforcing the support obligations of liable relatives and for billing and collecting sums otherwise owing to the State in connection with public assistance and child welfare cases.

The plaintiff Markis Stone and defendants Maher and Mickiewicz have jointly filed a written stipulation covering all of

---

**1.** In addition to their motion for summary judgment, the defendants Maher and Mickiewicz have also moved in the alternative under Rule 12(b)(7) to dismiss the complaint for failure to join persons needed for just adjudication under Rule 19. For an explication of the reasons why the Court has denied this motion to dismiss, see note 9 of this opinion, *infra*.

**2.** The Court sets forth its reasons for determining that the present action is maintainable as a class action in note 6 of this opinion, *infra*.

the facts material to this action.[3] On October 12, 1971, Areatha Washington ("the mother") gave birth to a baby girl, Tambree Lynn Washington ("the child"). At that time, the mother and plaintiff Stone were both residents of Hartford, Connecticut.

On January 10, 1972, Stone visited Officer John J. Bell of the Connecticut Family Relations Office, having been referred there by the Connecticut Department of Social Services. At that time Stone signed a document entitled "Acknowledgment of Paternity" which states that he is the father of Tambree Lynn Washington. Stone did not have an attorney with him when he signed this document. On that same day, Areatha Washington signed a document entitled "Affirmation of Paternity" which states that the plaintiff Markis Stone is the father of her child Tambree Lynn.

On January 11, 1972, the Family Relations Office filed these documents with the Clerk of State Circuit Court No. 14 (presently the Superior Court) in Hartford, Connecticut. The plaintiff was not present in court when these documents were filed.

In December of 1972, the plaintiff was arrested for criminal nonsupport under the authority of § 53–304 of the Connecticut General Statutes.[4] The Family Relations Office had reported plaintiff's failure to report to that office regarding his support obligations. The plaintiff was incarcerated for one night at the correctional center in Hartford. The prosecutor later withdrew the charges of nonsupport and entered a nolle prosequi.

On January 30, 1973, the plaintiff Stone executed an Agreement to Support with the assistance of Family Relations Officer John Bell. This support agreement set forth a schedule of weekly payments to commence on February 2, 1973. The Family Relations Office routinely filed this Agreement to Support with Circuit Court No. 14 and a Judge of the Circuit Court approved it without a hearing on February 5, 1973. Neither the plaintiff nor the defendants were present when this Agreement to Support was judicially approved. Between January 30, 1973 and September 9, 1976, the plaintiff Stone paid approximately $350.00 in support payments to the Family Relations Office in partial compliance with his Agreement to Support.

On September 13, 1973, the plaintiff and Areatha Washington again met with Officer Bell at the Family Relations Office. In the course of this meeting, the mother communicated to Mr. Bell that the plaintiff did not in fact father her child Tambree Lynn. She also executed and presented to Officer Bell a written affirmation stating that someone ("an old boyfriend") other than the plaintiff is the actual father of her child. On at least two subsequent occasions—August 19, 1974 and January 12, 1976—the plaintiff approached officers of the Family Relations Office and attempted to show them a paper, apparently a copy of Areatha Washington's written affirmation of September 13, 1973, which states that Markis Stone is not the father of Tambree Lynn Washington. Presumably the plaintiff sought by these actions to obtain a release from his obligations under the support agreement that he executed on January 30, 1973.

On September 6, 1976, a Family Relations Officer secured a warrant for the plaintiff's arrest for criminal nonsupport despite Areatha Washington's assertions that the plaintiff is not the father of her child. This warrant for the plaintiff's arrest was subsequently withdrawn on January 12, 1977 when the plaintiff agreed to pay to the Family Relations Office the sum of five dollars weekly for the support of Tambree Lynn Washington. The plaintiff now claims that he promised to make these support payments only in order to avoid arrest

---

**3.** Stipulations are a proper evidentiary basis for a summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See Munoz v. Int'l Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada,* 563 F.2d 205, 213 (5th Cir. 1977); *Menard v. Penrod Drilling Co.,* 538 F.2d 1084, 1087–88 (5th Cir. 1976).

**4.** Conn.Gen.Stat. § 53–304 is set out in the text of this opinion, *infra.*

and imprisonment. The plaintiff further alleges that if he fails to make his agreed weekly payments, the defendants Maher and Mickiewicz will seek his arrest and imprisonment under the authority of §§ 46b–172 (formerly § 52–442a) and 53–304 of the Connecticut General Statutes.

### Discussion of the Law

### The Challenged Criminal Statute: Conn.Gen.Stat. § 53–304

■ The plaintiff contends that Connecticut's criminal nonsupport statute[5] violates the constitutional due process rights of the plaintiff and others similarly situated[6] by eliminating the state's burden of proving to a jury beyond a reasonable doubt every element of the crime of nonsupport. More specifically, the plaintiff argues that the statute relieves the state of its burden of proving paternity—an essential element of the offense of nonsupport—if the defendant has previously acknowledged in writing his paternity of the child in question.

The Connecticut criminal nonsupport statute reads as follows:

"Any person who neglects or refuses to furnish reasonably necessary support to his ... child under the age of eighteen ... shall be deemed guilty of nonsupport and shall be imprisoned not more than one year, unless he shows to the court before which the trial is had that, owing to physical incapacity or other good cause, he is unable to furnish such support.... For purposes of this section, the term 'child' shall include one born out of wedlock whose father has acknowledged in writing his paternity of such child or has been adjudged the father by a court of competent jurisdiction." Conn. Gen.Stat. § 53–304(a).

There is no question that under this statute, paternity is an essential element of the offense of nonsupport: the statute quite understandably does not make a person responsible for support of just any child, but only for "*his* child" (emphasis added). The plaintiff, however, construes the last sentence of the statute as relieving the state of its burden of proving the essential element of paternity in a criminal prosecution for nonsupport if the defendant has previously executed a written acknowledgment of paternity. Plaintiff argues that this last sentence of the statute unambiguously provides that if a man has previously acknowledged in writing paternity of a child, then for purposes of a criminal prosecution for nonsupport, he is conclusively presumed to be the father of such child. Under the plaintiff's interpretation of the statute, therefore, the state could obtain a conviction for nonsupport without proving the defendant's paternity beyond a reasonable doubt merely by showing that the defendant had executed such a written acknowledgment of paternity.

■ If the plaintiff's construction of Connecticut's nonsupport statute were correct, then the statute would be unconstitutional. In the case of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Supreme Court emphatically decreed the state's burden in a criminal prosecution:

"Lest there remain any doubt about the constitutional statute of the reasonable doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction *except upon proof beyond a reasonable doubt of every*

---

5. Conn.Gen.Stat. § 53–304.

6. Plaintiff seeks to bring this action as the representative party on behalf of "all those persons who have signed or who will sign written statements to the effect that they are fathers of illegitimate children where said persons or the mothers of said illegitimate children are residents of Connecticut." (Plaintiff's Third Amended Complaint ¶ 6). As to the class so defined, the Court holds that this action may properly be maintained as a class action pursuant to subsections (a) and (b)(2) of Fed.R.Civ.P. 23. The plaintiff class meets the requirements of subsection (a) of Rule 23, and the defendants Maher and Mickiewicz have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final ... declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). *See Wilczynski v. Harder*, 323 F.Supp. 509, 512 n.3 (D.Conn.)

fact necessary to constitute the crime with which he is charged." *Id.* at 364, 90 S.Ct. at 1073 (emphasis added).

In reaffirming the principles of *Winship,* the Supreme Court recently emphasized that in a criminal case, all factual issues bearing on an essential element of the offense charged must be submitted to the jury:

"As in *Morrisette [v. United States]* [342 U.S. 246, 72 S.Ct. 240, 90 L.Ed. 988 (1952)] and *[United States v.] United States Gypsum* [438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978)], a conclusive presumption in this case would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury .... The State was thus not forced to prove 'beyond a reasonable doubt ... every fact necessary to constitute the crime ... charged,' [*In re Winship*] 397 U.S., at 364, [90 S.Ct. at 1073] and defendant was deprived of his constitutional rights as explicated in *Winship.*" *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 2458, 61 L.Ed.2d 39 (1979).

Under the plaintiff's interpretation of Conn.Gen.Stat. § 53–304(a), if the state can produce a written acknowledgment of paternity executed by the defendant, the defendant is "conclusively presumed" to be the father of the child in question and the trial court must accordingly direct the jury to find for the state on the issue of the defendant's paternity. So construed, the statute violates a defendant's constitutional right as explicated in *Winship* and *Sandstrom.*

The Court, however, finds that the Connecticut nonsupport statute is not entirely clear on its face and that it is reasonably susceptible of a construction that would render it constitutional under the Supreme Court's rulings in *Winship* and *Sandstrom.* The statute does not necessarily relieve the state of its burden of proving to the trier of fact that the child in question is the defend-ant's child. The last sentence of the statute does not provide a definition of the phrase "*his* child," as plaintiff's interpretation would require. Rather, the last sentence merely defines the term "child."

As set out in the text of this opinion, *supra,* the statutory definition provides that "the term 'child' shall include one born out of wedlock *whose father* has acknowledged in writing his paternity of such child...." Conn.Gen.Stat. § 304(a). (emphasis added). The plaintiff reads the statute as if it defined "child" in terms of a "person" or "defendant" or "*putative* father" who has executed a written acknowledgment of paternity. But the statute in fact merely defines "child" as one "*whose father*" has executed such an acknowledgment. The defendant is free under this statutory language to deny that he is the "father" despite his earlier written acknowledgment of paternity. In other words, in a criminal prosecution under the statute, a person/defendant who has signed an acknowledgment of paternity can nevertheless claim at trial that he is not the actual father of the child in question and put the state to its burden of proof.

In support of this interpretation of Connecticut's criminal nonsupport statute, the Court notes that when the Connecticut legislature intended to refer to a mere *putative* father, as distinguished from the person properly adjudicated as the actual father, the legislature used the term "putative father." *See, e. g.,* Conn.Gen.Stat. § 46b–172(a) (discussed in text of this opinion, *infra*).

Although Connecticut's criminal nonsupport statute is unclear on its face, it is reasonably susceptible of an interpretation that would avoid the federal constitutional issue raised by the plaintiff. Under established principles of federalism, therefore, it is appropriate that this Court abstain from rendering a decision on plaintiff's constitutional challenge to the Connecticut statute until the Connecticut court has first been given an opportunity to construe its own law. *See Colorado River Water Conservation District v. United*

*States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *McRedmond v. Wilson,* 533 F.2d 757, 761 (2d Cir. 1976). If the state court should construe its nonsupport statute consistent with the plaintiff's interpretation, thereby failing to moot or avoid the federal constitutional issue, then the plaintiff is entitled to return to this Court for an adjudication of his constitutional challenge in a federal forum. *See England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 421–423, 84 S.Ct. 461, 467–69, 11 L.Ed.2d 440 (1964) (reservation doctrine explicated).

### The Challenged Civil Statute: Conn.Gen.Stat. § 46b–172

The plaintiff also challenges the constitutionality of certain civil statutory provisions that govern child support obligations. Section 46b–172 (formerly § 52–442a) of the Connecticut General Statutes provides in pertinent part:

"(a) In lieu of or in conclusion of proceedings under section 46b–160, the written acknowledgment of paternity executed by a putative father of the child when accompanied by a written affirmation of paternity executed and sworn to by the mother of the child and filed with the superior court for the geographical area in which the mother of the child or the putative father resides shall have the same force and effect as a judgment of that court; . . . .

(b) At any time after the filing with the court of any acknowledgment of paternity, upon the application of any interested party, the court or any judge thereof shall . . . requir[e] the putative father to appear in court . . . to show cause, if any he has, why the court should not enter judgment [against him] for support of the child by payment of a weekly sum . . . . The prior judgment as to paternity shall be res adjudicata as to that issue and shall not be reconsidered by the court . . . ."

Plaintiff claims that Conn.Gen.Stat. § 46b–172 deprives him, and others similarly situated, of due process of law in violation of the Fourteenth Amendment to the United States Constitution. The Court finds that there is merit to the plaintiff's claim as to that portion of the challenged statute which provides that in a judicial proceeding to determine a person's child support obligations, two documents—a written acknowledgment of paternity executed by the putative father and a written affirmation of paternity executed by the mother—shall be given the weight and "res adjudicata" effect of a binding judgment of the court, thereby precluding actual litigation of the issue of the putative father's paternity.

■ A judgment under Conn.Gen.Stat. § 46b–172(b) imposing child support obligations upon a person obviously deprives that person of property in the form of weekly support payments. Since such obligations can be imposed only upon a person whose paternity has been established, a judgment of paternity may also cause a person to be deprived of property. Therefore, to the extent that it determines a person's child support obligations, a judgment of paternity may not be entered against a person without affording him due process of law.

There is no federal authority, however, that directly addresses the issue of what "due process of law" requires under the narrow circumstances presented by the plaintiff. The Court must therefore turn to general constitutional principles for guidance. The Supreme Court's landmark decision in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) provides a starting point for analysis:

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 313, 70 S.Ct. at 656–57.

Section 46b–172 of the Connecticut General Statutes provides that a binding "judgment" of paternity shall be entered against a person without any actual hearing at all if that person executes a written acknowledgment of paternity accompanied by the mother's sworn document "affirming" that person's paternity of her child. The issue therefore becomes whether a person waives his constitutional right to a hearing before the entry of judgment by signing an acknowledgment of paternity.

As noted above, the plaintiff's acknowledgment consisted of a printed form supplied by the Connecticut Family Relations Office entitled "Acknowledgment of Paternity."[7] This form, which was drafted pursuant to Conn.Gen.Stat. § 46b–172 (formerly § 52–442a), merely provides blank spaces for the names and addresses of the mother, child, and acknowledging person, and a space for the signature of the person stating "[t]hat I hereby acknowledge paternity of each child listed below . . . . " This acknowledgment form does not provide any information whatsoever regarding the acknowledging person's right to counsel or to a hearing on the issue of paternity, nor does it contain any language expressing a waiver of such rights. In the course of ruling that certain contract language did not constitute a contractual waiver of procedural due process rights, the Supreme Court emphasized that "a waiver of constitutional rights in any context must, at the very *least*, be clear." *Fuentes v. Shevin*, 407 U.S. 67, 95, 92 S.Ct. 1983, 2002, 32 L.Ed.2d 556 (1972). The Court in *Fuentes* also noted that "the involuntariness or unintelligence of a waiver [is not relevant] when the contractual language relied upon does not, on its face, even amount to a waiver." *Id.* at 95, 92 S.Ct. at 2002. As in *Fuentes,* the language relied on in the present action does not on its face amount to a waiver.

The defendants nevertheless argue that by actually admitting liability on the very issue in question—i. e., paternity—, a person such as the plaintiff *impliedly* waives his right to a formal judicial hearing on that issue. Concededly, there may be cases where a putative father wishes to avoid the possibility of added publicity that might result from such a formal hearing on the issue of paternity. The statute, however, is fundamentally deficient because it fails to provide for informing a putative father of the legal ramifications of signing a written acknowledgment of paternity. The statute does not require the state to inform a putative father of the statutory provision giving a written acknowledgment of paternity the effect of a binding judgment or of the legal consequences that may flow from such a "judgment." A formal hearing before the court, on the other hand, would likely alert a putative father that a judgment of paternity may be entered against him and that serious legal responsibilities will follow from such judgment. Thus, it would be fundamentally unfair for the law to imply a waiver of procedural due process rights merely because a person has signed an uncounseled and possibly coerced written acknowledgment of paternity.

 The Court finds that § 46b–172 of the Connecticut General Statutes is unconstitutional insofar as it provides that in a proceeding to determine a "putative" or alleged father's child support obligations, the alleged father is not permitted to deny his paternity or litigate the issue if he has previously signed a written acknowledgment of paternity and it is accompanied by the mother's written affirmation. This ruling is not intended to automatically alter or affect the paternity status or support obligations of the plaintiff or any other member of his class. It merely permits the plaintiff and his class to contest, and litigate for the first time in a judicial proceeding, the issue of paternity by seeking a modification in state court of prior support orders or agreements. Section 46b–174 of the Connecticut General Statutes[8] permits

---

7. See Exhibit A attached to the parties' joint Stipulations of Fact (filed Dec. 14, 1979).

8. Conn.Gen.Stat. § 46b–174 provides as follows:

**18**

a person to seek modification of prior paternity support orders or agreements in the Connecticut superior court. In such state court proceedings, the petitioner should be permitted to assert his nonpaternity as a basis for modifying or vacating a prior support order or agreement, unless said petitioner's paternity has previously been actually litigated and determined in a judicial proceeding. This Court's findings and order shall not otherwise affect the legal status of persons who have executed written acknowledgments of paternity.[9]

The plaintiff's motion for summary judgment is granted as to the claim that Conn. Gen.Stat. § 46b–172 in part violates the Fourteenth Amendment to the United States Constitution. The plaintiff, and others similarly situated,[10] are accordingly entitled to the limited declaratory relief outlined above. All other claims of the plaintiff are rejected as being without merit and as to such claims, the Court grants summary judgment in favor of the defendants.

SO ORDERED.

---

"The superior court shall have jurisdiction to enforce and modify all paternity orders and paternity support agreements issued by or filed with the court of common pleas or circuit court prior to or after October 1, 1963, and existing on July 1, 1978."

9. The defendants have moved under Rule 12(b)(7) to dismiss the complaint for failure to join persons needed for just adjudication under the requirements of Rule 19. The defendants claim that Areatha and Tambree Lynn Washington (mother and child) are "persons to be joined if feasible" within the meaning of subsection (a) of Rule 19 and that if joinder of these persons is not feasible, the factors listed in subsection (b) of the rule require the Court to dismiss the action.

The Court finds that Areatha and Tambree Lynn Washington are not persons that must be joined for just adjudication within the meaning of Fed.R.Civ.P. 19(a). As the text of this opinion makes clear, the Court's ruling does not by itself change the paternity status of the plaintiff or any members of his class. Therefore, the disposition of the action in the absence of the mother and child, Areatha and Tambree Lynn Washington, will not "as a practical matter impair or impeded [their] ability to protect [their] interest" in the subject matter of the action. If the mother and child in fact have an interest in preserving the paternity status and support obligations of the plaintiff, they can adequately protect that interest in the state court proceeding which the plaintiff must initiate following this Court's ruling in order to change his paternity status. Moreover, the Court notes that the mother and child are not longer receiving any support or assistance from either the plaintiff or the State of Connecticut. The parties have represented to this Court that both mother and child have moved to the Springfield, Massachusetts area, but their exact location is unknown.

10. For a description of the plaintiff class, see note 6, *supra*.